Meryle Lee GORDON, Appellee,

v.

IOWA DEPARTMENT OF TRANSPOR-
TATION, MOTOR VEHICLE
DIVISION, Appellant.

No. 85–713.

Supreme Court of Iowa.

June 18, 1986.

Thomas J. Miller, Atty. Gen., and Mark Hunacek, Asst. Atty. Gen., Ames, for appellant.

Richard J. Murphy, Osceola, and Richard O. McConville and Thomas J. Levis of Scalise, Scism, Sandre & Uhl, Des Moines, for appellee.

CARTER, Justice.

The Iowa Department of Transportation (the agency) has appealed from an order of the district court which reversed that agency's action revoking the motor vehicle operating license of plaintiff, Meryle Lee Gordon. The court of appeals affirmed the order of the district court. We granted further review.

The agency contends that both the district court and the court of appeals erred in concluding that the record before the agency does not contain substantial evidence, based on the results of chemical testing, that plaintiff operated a motor vehicle on November 5, 1983, with a blood alcohol concentration of ten hundredths or more. We agree with the contentions of the agency, vacate the decision of the court of appeals, reverse the order of the district

court, and reinstate the action taken by the agency in revoking plaintiff's operating privileges.

The evidence reveals that the plaintiff was observed driving erratically by an Osceola police officer on November 5, 1983. Upon stopping the motor vehicle, the officer observed that plaintiff's speech was slurred and that he smelled of alcohol. The arresting officer transported the plaintiff to the police station in Osceola where another officer, trained in the operation of a certified intoxilyzer machine for determining blood alcohol content from breath samples, administered a chemical test on a sample of plaintiff's breath.

The evidence offered at the hearing before the agency indicated that both the arresting officer and the officer who administered the test observed a digital display on the intoxilyzer machine which indicated a blood alcohol content of .177. Exhibit 1, which is the printed record of the test results produced by the machine, appears to read as follows:

    B       .17x
            .00
    C  .    .19

The figure opposite "B" above identifies the reading of the machine as to blood alcohol concentration. The figure opposite "C" above involves the calibration of the instrument. The "x" represents the third digit in the breath analysis printout. This third digit in a three-digit decimal reading was illegible at the time of the administrative hearing because someone has written the numeral "7" in ink over the numeral printed on the paper. Superimposed over the figures .17x and .19 on the machine's printout were a row of zeros also printed by the machine.

Based upon their interpretation of the chemical testing results, the Osceola peace officers certified to the agency that plaintiff had submitted to a chemical test pursuant to Iowa Code section 321B.16 the results of which indicated an alcohol concentration of ten hundredths or more. Based on that certification, the agency revoked the plaintiff's operator's license.

At a contested case hearing before an agency hearing officer on plaintiff's challenge to the action revoking his license, the plaintiff questioned both the arresting officer and the testing officer concerning the procedures for administering the chemical test and the manner in which the test results had been printed out. Both officers testified that they had observed a readout of .177 on the visual digital display on the machine and that, in their opinion, the printed card showed a reading of .177 underneath the superimposed zeros.

■ The officers were also questioned at length concerning the significance of the reading of .19 in the calibration column on the printed card. It was indicated by their testimony that the latter reading referred to calibration of the instrument, but the significance of the figure shown for purposes of the issues involved in the present case is not apparent from their testimony. Plaintiff's counsel at the contested case hearing contended to the hearing officer that the difference between the blood alcohol reading of .177 and the calibration reading of .19 evidenced an inaccuracy in the machine's operation. The principles upon which this assertion depends do not appear in the record and are not a proper subject of judicial notice. This contention was ignored by the hearing officer in his findings. He found that, based on the evidence,

the intoxilyzer machine printed out a reading of over .10 percent blood alcohol content, notwithstanding the fact that the mechanical printing capabilities of the machine may have jumped causing other numerical numbers to appear on the printout. The officer's testimony that the digital display on the machine indicated .177 would support the finding that the printed copy of the results of the test would be interpreted by reasonably prudent persons to indicate a blood alcohol content of .177.

Plaintiff appealed the finding of the hearing officer to the agency where he again urged that the difference in the blood alcohol reading and the calibration reading

indicated that the machine was malfunctioning. Again, we are unable to ascertain from the record the basis upon which this claim was made. The department of transportation, as had the hearing officer, ignored the claim involving the disparity between blood alcohol reading and calibration reading and affirmed the revocation of plaintiff's license by adopting the decision of the hearing officer as the final decision of the agency.

Plaintiff sought judicial review of the final agency action. In the claims made to the district court, no reliance was placed on the disparity between blood alcohol readings and calibration readings. Nor is any such claim urged on this appeal. The issue was argued in the district court solely on the basis that the superimposition of zeros over the printed readout of the blood alcohol concentration rendered the test results sufficiently unreliable that they did not constitute substantial evidence for revoking plaintiff's license. The district court agreed with this contention notwithstanding the testimony of the officers that the machine appeared to be operating properly except for the printing malfunction on the written test results. The court of appeals, in affirming the decision of the district court, also believed that the test results had been demonstrated to be unreliable.

■ The agency argues, and we agree, that the determination of whether an operator's license is properly to be revoked under Iowa Code section 321B.16 is not made by the arresting officer, but is the province of the agency. It further asserts that the agency's determination to revoke the license was based on substantial evidence contained in the apparent printed reading of .17x and the corresponding reading on the digital display showing a concentration of .177. It notes, in this regard, that the finding required for revocation is that plaintiff's alcohol concentration was ten hundredths or more. Iowa Code § 321B.16.

■ We have frequently said that evidence is "substantial" when a reasonable mind would accept it as adequate to reach a conclusion. *Varied Enterprises, Inc. v. Sumner,* 353 N.W.2d 407, 409 (Iowa 1984); *City of Davenport v. Public Employment Relations Board,* 264 N.W.2d 307, 311 (Iowa 1978). The possibility of drawing two inconsistent conclusions from the evidence does not prevent an agency's finding from being supported by substantial evidence. *Id.* at 311. In applying these standards in the present case, we conclude that, in the absence of more persuasive evidence that the machine was malfunctioning, the similarities between the visible numerals on the machine's printed record and the numerals appearing on the digital display constitute substantial evidence in favor of the agency's interpretation of the test results. Accordingly, we vacate the decision of the court of appeals and reverse the district court's order setting aside the revocation of plaintiff's operator's license.

DECISION OF COURT OF APPEALS VACATED; REVERSED.

All Justices concur except REYNOLDSON, C.J., who takes no part.