**OFFICE OF CONSUMER ADVOCATE, Appellant,**

v.

**IOWA STATE COMMERCE COMMISSION, Appellee,**

and

**Interstate Power Company and Northwest Iowa Power Cooperative, Appellees.**

No. 85–499.

Supreme Court of Iowa.

Sept. 17, 1986.

As Corrected Sept. 24, 1986.

As Amended on Denial of Rehearing Oct. 15, 1986.

James R. Maret, Alexis K. Wodtke, Des Moines, for appellant.

Susan Allender, Gen. Counsel, Patrick J. Nugent, Deputy Counsel, Diane Munns, Asst. Gen. Counsel, Des Moines, for appellee Iowa State Commerce Com'n.

Clement F. Springer, Jr., William D. Carstedt, Leslie Recht of Defrees & Fiske, Chicago, Ill., for appellee Interstate Power Co.

John T. Ward, Fred L. Dorr of Wasker, Sullivan & Ward, Des Moines, for appellee Northwest Iowa Power Co-op.

Considered by HARRIS, P.J., and McGIVERIN, SCHULTZ, WOLLE and LAVORATO, JJ.

SCHULTZ, Justice.

In this appeal from the district court's judicial review of an agency ruling by the Iowa State Commerce Commission, our first task is to identify the nature of the agency action. Interstate Power Company (Interstate) filed a petition with the Iowa State Commerce Commission (Commission), seeking a declaratory ruling as to the future treatment of the cost of a proposed purchase in the determination of electricity rates charged to customers. The Commission redocketed the action as a contested case, calling it an "accounting ruling proceeding," and granted the utility the relief it requested. On judicial review the district court, in affirming the Commission, determined that "the proceeding was in the nature of a declaratory ruling, no matter what the Commission called it." On appeal the court of appeals reversed the district court and labeled the ruling a "ratemaking decision" under Iowa Code chapter 476. In order that we may address the jurisdictional and substantive issues raised on appeal, we must initially determine the nature of the agency proceeding.

The basic facts underlying the original agency action are uncomplicated. Interstate tentatively proposed to buy from Northwest Iowa Power Cooperative (Northwest) twenty-five megawatts of ownership in an electric generating plant. The purchase price of $16,875,000 would exceed Northwest's acquisition cost of that interest, less depreciation, by the sum of $3,270,500. This profit is referred to as unamortized acquisition adjustment (adjustment).

The proceedings employed by the parties in their attempt to resolve the accounting treatment of the adjustment amount were complex and unusual. The present action before the Commission is a continuation of an earlier proceeding involving another proposed acquisition by Interstate. In December 1982, Interstate was negotiating

with another utility for a similar purchase of an interest in the same plant. The proposed cost and adjustment were higher than that of the later proposal involving Northwest. In both proposals Interstate's concern was whether it could pass on the amount of the adjustment as a cost to its customers by the way of an increase in its rate base, rather than bearing the cost of the adjustment itself at the expense of its stockholders. Interstate filed a petition with the Commission seeking a declaratory ruling that the adjustment properly could be included in the rate base. Interstate alleged that, if the Commission were unable to provide an order authorizing Interstate to include the adjustment in the rate base, Interstate might be required to purchase other capacity under construction. Such a purchase would be at a higher cost, and apparently would be included automatically in Interstate's rate base, under Commission rules, and would be passed on to Interstate's customers.

The Commission docketed the petition as a contested case with the end result anticipated to be an accounting ruling because, it said, Commission rules precluded holding of an evidentiary hearing to consider factual questions presented by the petition. Furthermore, the Commission reasoned that there were factual and legal questions that should be addressed in a contested case proceeding in which the Commission's staff and other interested persons might participate. Originally, the Commerce Counsel entered an appearance and participated in this proceeding on behalf of the public; however, the Commerce Counsel has since been replaced by the Office of the Consumer Advocate.[1] Factual information requested by the Commission was filed and testimony was given. The Consumer Advocate moved to dismiss the case. The motion and accompanying brief primarily attacked the factual basis supporting Interstate's petition and the legal precedent in allowing a utility to pass on this adjust-

---

1. On July 1, 1983, the responsibilities of Commerce Counsel were transferred to the Office of Consumer Advocate pursuant to the provisions of Acts 1983 (1983 Iowa Acts ch. 127 (codified at Iowa Code ch. 475A (1985)). For the sake of convenience we shall refer to the participation by the Commerce Counsel as the acts of its successor, the Consumer Advocate.

ment to ratepayers. Interstate claimed it needed to get approval of the method of handling the adjustment, so that when a rate case arose in the future, the acquisition adjustment amount would get the requested treatment, *i.e.*, inclusion in the rate base. In response to this, the Consumer Advocate suggested that Interstate make the purchase and obtain actual numbers to present to the Commission, showing the benefit to the consumers in a proper rate case. The Consumer Advocate's motion and the brief did not suggest that the Commission lacked authority to rule on the petition as filed and docketed by the Commission.

The Commission refused to dismiss, but requested that Interstate supply additional information to support its claim that the purchase was the least cost option available to the company. As a result, Interstate was forced to make further inquiries, and later filed an amended petition requesting a declaratory ruling on the rate base treatment of the acquisition adjustment on the proposed acquisition from Northwest.

The action proceeded to an additional evidentiary hearing on the merits of the amended petition. Interstate sought to prove that the customer should pay rates based on the entire acquisition cost because the purchase was for a very good price. Consumer Advocate witnesses took a contrary position, challenging the claim of benefit to customers, and recommended more careful study of various alternatives available to Interstate before the proposal would be approved. Following the hearing, the Consumer Advocate filed its brief and proposed findings of fact going to the factual and legal issues of the petition but not attacking the authority of the Commission to act on the petition.

The Commission ruled that the acquisition adjustment "shall be included in the rate base," and spelled out in detail the accounting treatment of the adjustment amount. The Consumer Advocate filed a lengthy application for rehearing claiming that the facts did not justify the decision and that the decision was in contravention of previously established policy in regard to ratemaking principles. The Commission denied the application for rehearing.

The Consumer Advocate sought judicial review in the district court of the agency action. Interstate and Northwest intervened in that action. The petition and amendment primarily attacked the factual determination and legal rulings that contravened previous precedent on establishing rates. No specific attack was made on the Commission's authority to proceed as it did in this case; however, the Consumer Advocate did argue to the district court that this was in effect a rate case and that the procedures appropriate to a rate case had not been followed. The petition included a general statement that the ruling was "contrary to law and established procedural rules." The district court rejected these arguments and described the agency proceeding as "unique," concluding that this was not a rate case and thus did not bring into play Iowa Code section 476.6, which prescribes detailed procedures for a rate case, including notice to the customers. In one division of a motion to enlarge or amend the findings and conclusions of the district court ruling, the Consumer Advocate raised the issue of whether the agency proceeding was a contested case or declaratory ruling proceeding. In overruling the motion, the district court concluded that, because the facts ruled on were hypothetical, the proceeding was in the nature of a declaratory ruling, and that no rule prohibited a hearing in a declaratory ruling.

The Consumer Advocate now challenges both the agency's authority to issue this type of ruling without compliance with procedural protections required in ratemaking cases, and the factual basis in the record to support the Commission's decision. The Commission raises the question of whether or not the appeal was filed within the statutory period.

I. *Type of agency action.* As we have indicated, the parties are unable to agree as to the character of the action before the Commission. The procedures adopted by the Commission appear to be a hybrid vari-

ety and provide ammunition both for the claim that this is a rate case and for the claim that this is some type of a declaratory ruling proceeding.

■ Is this a rate case? There are certain factors that so indicate. Interstate sought approval of the inclusion of the adjustment amount as an acquisition cost in the rate base. The Commission held a contested case hearing and evidence was presented concerning the justification for treating the adjustment as cost-of-service amortization. The Commission order stated that the "adjustment shall be included in the rate base." Despite these factors, we do not believe that this is a rate case.

Other factors indicate that this proceeding could not be a rate case. Interstate did not seek a rate increase as a part of the proceeding. The requirements of section 476.6 were not met; notice was not provided to customers. *See* Iowa Code § 476.-6(5). Evidence as to hypothetical facts was submitted to the Commission rather than a submission of "factual evidence" as required by section 476.6(6).

Furthermore, we find no indication that anyone intended this to be a proceeding that would bind the customers to a certain utility rate. Interstate concedes, and we agree, that the Commission ruling is not a binding rate proceeding and that in the future, when it seeks a rate increase, Interstate will have to give notice to customers and be subject to proof pursuant to the statute. Any language in the Commission's order suggesting that it binds customers in future rate cases must be modified.

■ If it is not a rate case, what is the nature of this proceeding? The Commission, when it decided to redocket this action, labeled the proceeding as an "accounting ruling." The Consumer Advocate contends that there is no rule providing for a proceeding called an "accounting ruling." However, within its chapter on accounting rules, the Commission has provided, "If unreasonable hardship to a utility or to a customer results from the application of

any rule herein prescribed, application may be made to the commission for the modification of the rule or for temporary or permanent exemption from its requirements." 250 Iowa Admin. Code 16.1(1)(a). This type of application to the Commission would seem to be what one commentator calls "nondeclaratory ruling advice." Bonfield, *The Iowa Administrative Procedure Act: Background, Construction, Applicability, Public Access to Agency Law, The Rulemaking Process,* 60 Iowa.L.Rev. 731, 810 (1975). This type of advisory opinion would be excluded by the Iowa Administrative Procedure Act from the definition of "rule." Iowa Code § 17A.2(7)(b). Thus, issuance of such an advisory opinion would not require that the agency follow rulemaking procedures in order for the opinion to be valid. However, such an opinion would not be binding on the agency, nor would it be judicially reviewable. Bonfield, *supra,* at 810.

■ We conclude that the agency does have the power to issue an "accounting ruling" under its own rules and pursuant to chapter 17A. Such a ruling, however, would be in the nature of an advisory opinion, and thus would not be binding on the Commission in a future ratemaking case and would not be judicially reviewable. There appears to be an analogous proceeding used at the federal level. *See United Gas Pipeline Co.,* 25 F.P.C. 26, 55 (1961) ("[T]he Commission majority in the past has uniformly held that these accounting reclassification orders were not conclusive for rate case purposes.").

■ In this case, it appears that the procedures utilized were much more structured than those that would be used to issue mere informal advice from an agency. Interstate filed a formal petition with the agency. While referring to it as an accounting ruling proceeding, the Commission required a formal evidentiary hearing and obtained suggested findings of fact and briefs from the parties. No one objected to these proceedings, and a formal ruling was rendered. While the Commission simply and properly could have confined its

proceeding to the giving of an advisory opinion, the Commission chose the unusual procedure of declaring Interstate's rights following an evidentiary hearing. The adoption of this procedure, added to the issuance of a purportedly binding order, suggests something other than an advisory opinion.

■ Is this a binding declaratory ruling as indicated by the district court? The agency is permitted to issue declaratory rulings. Iowa Code § 17A.9. That section also provides that "each agency shall provide by rule for the filing and prompt disposition of petitions for declaratory rulings." *Id.* The Commission has promulgated rules regarding declaratory rulings, which permit a petitioner to file with the Commission "a brief, memorandum or other material in support of his position on the question presented for the declaratory ruling." 250 Iowa Admin.Code 4.4(1).

■ The Consumer Advocate's position is that this could not be a valid agency declaratory ruling. It correctly points out that the agency's own rule explicitly states "no hearing shall be permitted in considering the disposition of a petition for declaratory ruling. No oral argument shall be permitted in considering the disposition of a petition for declaratory ruling." 250 Iowa Admin.Code 4.4(2). The Consumer Advocate urges that the violation of an agency's own rule is one of the grounds on which agency action may be challenged upon judicial review. Iowa Code § 17A.19(8) (on judicial review the court may grant relief from an agency action "if substantial rights of the petitioner have been prejudiced because the agency action is ... in violation of an agency rule...."). We agree, however, with the agency that the violation of the rule alone does not prevent us from concluding that this is a valid declaratory ruling, because we do not believe that the rights of the Consumer Advocate were prejudiced. The hearing merely aided the Commission and the parties in determining the hypothetical facts that formed the basis for the ruling. It did not deprive the Consumer Advocate of any of its rights.

■ We believe the proceedings before the agency most nearly fit within the category of a declaratory ruling. By this determination, we do not suggest that the Commission or other agencies adopt the procedures employed in this case in other declaratory judgment rulings. The agency's own rules provide that the Commission may dismiss a petition for declaratory ruling if the petition presents issues better resolved as a contested case, 250 Iowa Admin.Code 4.6(11), or where such a ruling "though technically binding only upon the commission and the petitioner, would necessarily determine the legal rights of other persons who have not filed such a petition and whose position on the issue may fairly be presumed to be adverse to the petitioner, or who are unrepresented in the declaratory ruling proceeding." 250 Iowa Admin.Code 4.6(12). Here, the Commission did determine that this was not an appropriate issue for declaratory ruling. Perhaps the better action would have been dismissal by the Commission, and later disposition of the issue in a ratemaking proceeding of which customers of Interstate had been given notice. If the Commission deemed it necessary to provide some indication as to its thinking, however, it could have employed the nonbinding advisory ruling device.

II. *Jurisdiction.* Beginning with the premise that this is a declaratory ruling rather than a contested case, the Commission protests that the Consumer Advocate has filed its appeal after the 30-day appeal period allowed under Iowa Rule of Appellate Procedure 5(a). This would be true unless the Consumer Advocate's motion to enlarge or amend the district court's conclusions pursuant to Iowa Rule of Civil Procedure 179(b) tolls the period for appeal. We believe that the Consumer Advocate's motion did toll the 30-day period.

■ A motion to enlarge the findings of fact or conclusions of law pursuant to rule 179(b) is permitted after a ruling on judicial review of an agency action in a

contested case. *Osborne v. Iowa Natural Resources Council*, 336 N.W.2d 745, 747 (Iowa 1983); Iowa R.Civ.P. 333(c). Despite the fact that we have determined that this is a declaratory ruling, the agency docketed the matter as a contested case and tried the matter as a contested case. Our labeling of the case as a declaratory ruling after the fact does not change the actual procedures applied. The rule 179(b) motion was appropriate under these unique circumstances and tolled the time required for filing notice of appeal.

■ III. *Validity and effect of the agency ruling.* We have determined that the Commission's ruling was a declaratory ruling. A declaratory ruling has the same status as an order in a contested case. Iowa Code § 17A.9. When the findings of fact are challenged in such a case, judicial review is not de novo, but is limited to an examination of whether the agency action is supported by substantial evidence in the record as a whole. Iowa Code § 17A.19(8)(f). Evidence is substantial enough to support agency action if a reasonable person would find it adequate to reach the given conclusion, even though a reviewing court might draw a contrary inference. *Fernandez v. Iowa Department of Human Services*, 375 N.W.2d 701, 705 (Iowa 1985).

■ The Consumer Advocate has consistently challenged the sufficiency of the evidence in the record to support the ruling in this case. Although expert testimony presented by the various parties to this action conflicted on issues such as the projected need for additional capacity and the actual dollar amounts of benefits to customers, we believe the Commission could reasonably have found that these facts warrant an exception to the general accounting rule. We hold that this was a valid declaratory ruling, based on substantial record evidence.

We have also indicated the ruling is limited and cannot have a binding effect on future rate cases. The question that follows is whether the agency ruling has any actual effect. We think the effect of the ruling must be limited to Interstate's accounting practices. It provides direction to Interstate in accounting for the acquisition adjustment amount on its own books, and indicates that the Commission would be willing, given appropriate facts, to allow Interstate to invoke the exception to the original cost method of accounting. Although the Commission purportedly has decided in advance that Interstate's facts warrant application of the exception, under the standard set forth in *Davenport Water*, 76 P.U.R.3d 209, 217 (ISCC 1968), *aff'd*, 190 N.W.2d 583 (Iowa 1971), these facts may be challenged by Interstate's customers at the next rate hearing. To ascribe further effect to the declaratory ruling would jeopardize the ratemaking process established by the legislature. Consequently, we limit the effect on the ruling to the accounting practices described.

IV. *Ruling.* We agree with the district court's ruling on judicial review that the agency should be affirmed, with one exception. We believe the district court should have modified the agency's order by striking paragraph one of the order, which says, "The unamortized acquisition adjustment shall be included in the rate base." The order should be modified to provide that the unamortized acquisition adjustment for accounting purposes may be included in the Electric Plant accounts in the manner prescribed by the Commission's Uniform System of Accounts; however, if Interstate wishes to include these costs in its rate base, it must file an application for a rate change and make appropriate proof under Iowa Code § 476.6. Consequently, we reverse that part of the district court ruling that affirms the agency in all respects. We remand to the Commission so that it may modify its order in accordance with this opinion.

DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART.