**OFFICE OF CONSUMER ADVOCATE, Appellant,**

v.

**IOWA UTILITIES BOARD, Appellee.**

**INTERSTATE POWER COMPANY, Appellee,**

v.

**IOWA UTILITIES BOARD, Appellee.**

**INTERSTATE POWER COMPANY, Appellee,**

v.

**IOWA UTILITIES BOARD, Appellee.**

No. 89–751.

Supreme Court of Iowa.

April 18, 1990.

James R. Maret, Consumer Advocate, and Ronald C. Polle and Alexis K. Wodtke, for appellant.

Susan Allender, General Counsel, and Vicki Place, Asst. General Counsel, for appellee Iowa Utilities Bd.

Clement F. Springer, Jr., and William D. Carstedt of DeFrees & Fiske, Chicago, Ill., for appellee Interstate Power Co.

LARSON, Justice.

Interstate Power Company (Interstate) proposed to raise its electric rates, and the matter was submitted to the Iowa Utilities Board. The board granted a portion of the rate increase and also allowed Interstate an additional increase as a reward for management efficiency under Iowa Code section 476.52 (1987). The Office of Consumer Advocate (OCA) petitioned for judicial review, and Interstate filed its own petition. The petitions for judicial review were consolidated in the district court. Interstate requested, and obtained, authority from the district court to allow it to continue collecting under interim rates set by the board, pending judicial review.

The district court affirmed, in large part, the board's rate increase but remanded for more specific findings by the board with respect to Interstate's entitlement to the statutory bonus for extraordinary efficiency. In a separate order, the district court entered a ruling permitting portions of the board's decision which had not been remanded to the board or appealed to this court to go into effect. On OCA's appeal to this court, we affirm.

OCA challenges the board's allowance of (1) costs incurred in canceled power plants, (2) allegedly excessive costs in purchasing a share of an existing power source, and (3) an allowance for "extraordinary efficiency" of Interstate management. A fourth issue concerns the district court's order allowing Interstate to collect, pending judicial review, rates in excess of the final rates approved by the board.

■ General principles governing our review of the board's actions are well established. In the highly technical field of public utility rate regulation, it is proper, even necessary, to grant considerable deference to the expertise of the board. *See Office of Consumer Advocate v. Iowa State Commerce Comm'n*, 432 N.W.2d 148, 152 (Iowa 1988); *Northwestern Bell Tel. Co. v. Iowa State Commerce Comm'n*, 359 N.W.2d 491, 497 (Iowa 1984). In reviewing the board's decision, courts are not free to de-

cide whether the board acted wisely. *Iowa–Illinois Gas & Elec. Co. v. Iowa State Commerce Comm'n,* 412 N.W.2d 600, 604 (Iowa 1987). It is not for the court to engage in rate fixing, either directly or under the guise of judicial construction. *Davenport Water Co. v. Iowa State Commerce Comm'n,* 190 N.W.2d 583, 592 (Iowa 1971).

■ Under the "just and reasonable" standard of review, applicable in these cases, the burden of proof is on a party challenging an order of the board, and if the challenger fails to produce evidence that the rate is not just and reasonable, the board should be affirmed even if it produces no evidence of justness or reasonableness. The challenger carries a heavy burden of making a convincing showing that the order is invalid because it is unjust and unreasonable in its consequences. *Northwestern Bell,* 359 N.W.2d at 497.

### I. *The Canceled Plant Projects.*

Interstate invested substantial amounts of money in two proposed generating plants which were ultimately canceled. The board permitted Interstate to recover its investment through rates charged its customers on the ground that the initial investments, as well as the ultimate decisions to cancel them, were prudent when made.

A. *The substantial evidence issue.* OCA argues that the board's findings as to the canceled plant projects were not supported by substantial evidence, and, OCA contends, the board (1) acted in violation of its own accounting rules, and (2) violated the "used and useful" principle.

■ B. *The accounting rules issue.* OCA argues that the board violated its own accounting rule, 199 Iowa Admin.Code 16.-2(9), by allowing the costs of the canceled plant to be charged to ratepayers. That rule provides:

> Accounts 421.1 or 421.2 as they are defined and exist in the uniform system of accounts, shall be used to account for the gain or loss on the sale, conveyance, exchange, or transfer of utility or other

property, including land and land rights, unless otherwise authorized or required by the board for good cause shown.

If this rule were applied here, OCA argues, the canceled plant costs would not be passed on to ratepayers. As the board points out, however, accounting rules are not binding in rate-fixing cases. This is specifically provided by 199 Iowa Administrative Code 16.1(2), which provides, in relevant part:

> *Effect of rules.* In prescribing uniform systems of accounts for public utilities, the board does not commit itself to the approval or acceptance of any item set out in any account for the purpose of fixing rates or in determining other matters before the board.

Moreover, as we noted in *Office of Consumer Advocate v. Iowa State Commerce Commission,* 395 N.W.2d 1, 5 (Iowa 1986), a rule such as accounting rule 16.2(9), if applied in future rate cases, would be in the nature of an advisory opinion and would not be binding on the board in a future rate case. Also, the board is free to change its rules and procedures. *Id.*

We find no error in the board's refusal to apply the accounting rule here.

■ C. *The "used and useful" issue.* In the recent case of *Office of Consumer Advocate v. Iowa Utilities Board,* 449 N.W.2d 383 (Iowa 1989), we stated that

> [t]he "used and useful" standard is derived from United States Supreme Court holdings that a utility is entitled to a reasonable return on the value of property used to render services, but "it is not entitled to have included any property not used or useful for that purpose."

*Id.* at 386 (quoting *Iowa–Illinois Gas & Electric v. Iowa State Commerce Comm'n,* 347 N.W.2d 423, 428 (Iowa 1984)).

In *Office of Consumer Advocate,* we held that the "used and useful" rule does not restrain the board in allowing recovery of canceled plant projects through amortization and that this rule "cannot be applied outside rate base questions without doing violence to the whole scheme of public utili-

ty law." *Office of Consumer Advocate,* 449 N.W.2d at 387.

In this case, the board allowed a recovery *of* the investment, but denied recovery *on* the investment (by refusing to include the unamortized balance in Interstate's rate base). Thus, the board took the middle ground on this controversy. Because the board refused to allow inclusion of the canceled plant projects in the company's rate base, the "used and useful" rule is inapplicable. *Id.*

We conclude that the board acted within its authority on this issue and should be affirmed.

Allowance by a utility of the prudent investment in canceling generating projects has been the majority rule. As the Washington Supreme Court has noted,

> [a]pproximately 100 state regulatory agencies in some 33 jurisdictions have faced the question of how to allocate the burden of costs associated with abandonment of power plant projects. As the Supreme Judicial Court of Massachusetts summarized in *Attorney Gen. v. Department of Pub. Utils.,* 390 Mass. 208, 455 N.E.2d 414, 422 (1983):
>
> > A substantial majority of the public regulatory agencies that have considered the question have permitted a utility to recover all or some portion of the prudently incurred costs of a nuclear power plant reasonably abandoned before completion.
>
> (Footnote omitted. Italics ours.)
>
> . . . .
>
> As with regulatory agencies, the substantial majority of courts that have considered the matter have also allowed utilities to recover abandoned plant costs, prudently incurred, as operating expenses or as expenses which could otherwise be amortized.

*People's Org. for Washington Energy Resources v. Washington Utils. & Transp. Comm'n,* 104 Wash.2d 798, ——, 711 P.2d 319, 331, 332 (1985) (footnotes omitted).

■ We agree with the district court that the board's inclusion of the costs of the abandoned plant projects in the utility's allowable expenses was supported by the law and the record.

II. *The "Acquisition Adjustment" Issue.*

■ In April 1984, Interstate acquired an additional twenty-five megawatts ownership interest in Neal No. 4 generating station from Northwest Iowa Power Cooperative (NIPCO) at a price of $16,875,000. The price included an "acquisition adjustment" of $3,439,321, representing the amount Interstate paid over and above NIPCO's original cost, less depreciation. According to prior board precedent, the acquisition amount may be included in the rate base if actual benefits to customers are established by the utility. *In re Davenport Water Co.,* 76 P.U.R.3d 209, 228–29 (1976).

■ Generally, inclusion of an acquisition adjustment places the burden of proof upon the utility to show that the asset acquired is of value to consumers and "has neither been adequately covered in the rate base nor recognized from prior earnings of the business," *Federal Power Comm'n v. Natural Gas Pipeline Co.,* 315 U.S. 575, 589, 62 S.Ct. 736, 744, 86 L.Ed. 1037, 1051 (1942). An acquisition adjustment such as the one granted Interstate will be allowed in the rate base if the excess price "produced consumer benefits in the form of reduced rates, improved service, or otherwise," and is not shown to relate to benefits conferred on consumers which are not proximate in time, *United Gas Pipe Line Co.,* 25 F.P.C. 26 (1961). Regulatory agencies, including the Iowa board, "have generally recognized that acquisition adjustments may be permitted in an original cost rate base if a showing of countervailing equities can be demonstrated pursuant to the so-called 'consumer benefits test.'" *Peoples Natural Gas Co.,* Docket No. U–546 (ISCC 11/16/76) and *Peoples Natural Gas Co.,* Docket Nos. RPU–76–34 and RPU–77–17 (ISCC 10/25/78).

■ Under these authorities, an acquired interest in such a facility should be valued no higher than it was valued on the books of the seller; however, if the purchase is

made for less than it would cost the utility to provide other means of acquiring the necessary power, the "adjustment" may be allowed. In this case, the board found that the utility had met its burden of showing this to be true.

Interstate has proven facts in the subject rate proceeding which are substantially similar to the hypothetical facts which it presented in declaratory proceeding Docket ARU–83–1. The twenty-five megawatt ownership interest which Interstate proposed to purchase from NIPCO in Docket ARU–83–1 at a price of $16,875,000 was in fact purchased from NIPCO at that price on April 4, 1984. The acquisition adjustment amount which Interstate estimated in Docket ARU–83–1 at approximately $3,270,500 was in fact $3,439,221 (the difference being due in part to additional accrued depreciation by NIPCO during the pendency of the Docket ARU–83–1 proceedings). The annual fuel savings attributed to this acquisition, estimated at approximately $1,783,000 in Docket ARU–83–1 were in fact only $1,522,000 (the difference being due in part to reduced system-wide fuel costs) and the annual savings in avoided alternative capacity costs estimated at $1.2 to $1.3 million in Docket ARU–83–1 were in fact shown to be between $1.13 and $1.17 million.

Based in part on the discrepancies in these statistics, OCA disputes the board's findings on the issue of the acquisition assessment. However, the possibility of drawing two inconsistent conclusions from the evidence does not prevent an agency's finding from being supported by substantial evidence. *Gordon v. Iowa Dep't of Transp.*, 389 N.W.2d 390, 392 (Iowa 1986). The question is not whether there is sufficient evidence to warrant a decision the agency did not make, but rather whether there is substantial evidence to warrant the decision it did make. *Peoples Memorial Hosp. v. Iowa Civil Rights Comm'n*, 322 N.W.2d 87, 91 (Iowa 1982). A finding of fact made by an agency is conclusive when facts are in dispute or when reasonable minds may differ on the inferences to be drawn from the evidence.

*Harlan v. Iowa Dep't of Job Serv.*, 350 N.W.2d 192, 193 (Iowa 1984).

OCA contends that the board in this case simply adopted its findings from earlier proceedings in this case in which the benefits were only estimated. The board, however, apparently made only a drafting error in the present order by referring to the estimated benefit figures rather than the actual figures submitted by Interstate in these proceedings. We do not agree with OCA that the board failed to consider the evidence presented to it in reaching its final decision.

OCA also argues that the board misallocated the burden of proof. The underlying argument is that the board did not require Interstate to make adequate proof that the acquisition benefited customers. The words "burden of proof" may refer to the burden of producing evidence or the burden of persuading the fact finder. While the burden of persuasion does not shift, the burden of producing evidence can shift. *McDowell v. Town of Clarksville*, 241 N.W.2d 904, 908 (Iowa 1976). Interstate had the burden to show that the acquisition adjustment was justified. When the party having the burden has made its prima facie case, the "burden" or "duty" rests upon the opposing party to go forward with its proof to meet the prima facie case. *Gipson v. Iowa Dep't of Job Serv.*, 315 N.W.2d 834, 836 (Iowa App. 1981).

Here, OCA was assigned the burden of going forward with the evidence to rebut Interstate's prima facie showing, but OCA was not required to assume the burden of proof. We conclude that the acquisition adjustment allowance by the board was based on proper procedure and was amply supported in the record.

III. *The "Extraordinary Efficiency" Bonus.*

Iowa Code section 476.52 provides:

**476.52. Management efficiency**

It is the policy of this state that a public utility shall operate in an efficient manner. *If the board determines* in the

course of a proceeding conducted under section 476.3 [complaints investigation] or 476.6 [charges in rates supply and cost review] *that a utility is operating in an inefficient manner,* or is not exercising ordinary, prudent management, or in comparison with other utilities in the state the board determines that the utility is *performing in a less beneficial manner* than other utilities, *the board may reduce the level of profit or adjust the revenue requirement* for the utility to the extent the board believes appropriate to provide incentives to the utility to correct its inefficient operation. *If the board determines* in the course of a proceeding conducted under section 476.3 or 476.6 that a utility is operating in such an extraordinarily efficient manner *that tangible financial benefits result to the ratepayer, the board may increase the level of profit or adjust the revenue requirement for the utility.* The board shall adopt rules for determining the level of profit or the revenue requirement adjustment that would be appropriate.

The board shall also adopt rules establishing a methodology for an analysis of a utility's management efficiency.

(Emphasis added.)

OCA argues that the board may grant efficiency rewards only if the benefits are both tangible and financial, and this means that the benefits must be "definable, measurable, or capable of being appraised at an actual or approximate value." For a benefit to be financial, it must be "pecuniary in nature." Thus, it argues, tangible and financial benefits to ratepayers are those benefits which can be measured, or quantified, in terms of dollars and cents.

The board argues that the plain language of section 476.52 does not require it to quantify a finding of efficiency. It argues that OCA adds an element that the legislature did not include in the statute. It cites our decisions on statutory construction for the proposition that the plain and ordinary meaning should be applied and that a court may not read into a statute an intent and meaning not expressed.

The board contends OCA's argument that management efficiency rewards be reasonably related to the cost savings to consumers reads into the statute an intent not expressed therein and that the legislature left to it the task of promulgating rules to effectuate this determination. The rules it adopted relate to the degree of management efficiency rather than a relation to the cost savings resulting from management efficiency.

We believe the board acted within its realm of statutory authority under section 476.52 by allowing the efficiency reward without quantifying it in dollars saved. Management practices being rewarded might well establish a practice, or a precedent for other utilities, which will bear financial rewards in the future, and there are, no doubt, other examples of management innovations or improvements which will benefit customers in ways other than immediate rate reductions. This is an area for the exercise of the board's expertise.

## IV. *Collection of Interim Rates.*

On May 1, 1986, Interstate filed the electric rate increase application, docketed as RPU–86–8, which is the subject of the present case. It also filed an application for interim rate relief, requesting authority to implement interim rates at an increased level above the existing rates during the pendency of the rate-increase proceedings. On July 24, 1986, the board entered an order denying Interstate the increased interim rates, resulting in the continuation of the level of rates then being collected. Interstate filed a motion for stay in the district court, seeking an order allowing it to continue to collect, during the pendency of the judicial review proceedings, rates at the annual level which had been established earlier on Interstate's application for interim rate allowance. The district court granted Interstate's motion for stay thereby allowing it to continue to collect the existing rates, under bond and subject to refund.

OCA argues that the effect of the board's order denying Interstate's applica-

tion for increased interim rates was to not set any rates at all. The board simply denied the increase requested by Interstate. The clear import of the order, however, is to permit the existing rates under the prior board order to remain in effect.

This issue turns on the application of Iowa Code section 476.13(3), which provides:

> Notwithstanding the Iowa administrative procedure Act, if a public utility seeks judicial review of an order approving rates for the public utility, the level of rates that may be collected, under bond and subject to refund, while the appeal is pending shall be limited to the level of the temporary rates set by the board, or the level of the final rates set by the board, whichever is greater. During the period the judicial review proceeding is pending, the board shall retain jurisdiction to determine the rate of interest to be paid on any refunds eventually required on rates collected during judicial review.

 We have held that the legislature intended utilities to not have judicial review of temporary rates. *Northwestern Bell Tel. Co. v. Iowa State Commerce Comm'n*, 359 N.W.2d 491, 496 (Iowa 1984). We stated, "[i]f instead the utility could obtain judicial review of temporary rates and obtain its desired rates from courts, as in this case, its motivation to seek permanent rates would be dulled and fulfillment of the legislative scheme would be hampered." *Id.* Additionally, only the board, not the court, has the power to fix rates. *Davenport Water Co. v. Iowa State Commerce Comm'n*, 190 N.W.2d at 592.

 The district court, on a motion for consolidation and a motion to stay final order, held that the 1983 interim rates were still in effect because the 1983 rate case was still on appeal and a stay had been granted on the 1983 final order. Thus, the interim rate for the 1986 rate case was the 1983 interim rate. The district court stated:

> The court has read over the Order Setting Interim Rates issued July 24, 1986. That Order reflects that the board did not set new interim rates because the level of adjusted test year revenues then being collected by interstate pursuant to interim rates placed in effect in a prior rate proceeding, Docket No. RPU–83–27, and *continued in effect pursuant to a Court-ordered stay* upon appeal therefrom, was greater than the level of interim rates which the board determined it would otherwise allow. The board went through the process of deciding what interim rates would be, but did not set new interim rates because the existing interim rate level was greater than the revenue requirement it found.

(Emphasis added.) Thus, Interstate did not seek judicial review of the interim order to rewrite it or to fix a "different" level of rate. The board set the 1986 interim rate which happened to be the 1983 interim rate. The district court only granted Interstate's request to continue to collect at this rate, and in doing so, did not act beyond its authority.

In addition, Interstate has agreed to refund excess funds collected pursuant to this stay if it loses the appeal of the final order setting final rates to the 1986 case. Thus, the consumers are in no danger of being shortchanged.

We find no error in the district court's disposition of the interim rate issue. We find no error in these proceedings and therefore affirm.

AFFIRMED.

All justices concur except CARTER, J., who takes no part.