**In the Interest of C.W. and S.W., Minor Children,**

**T.W., Mother, Appellant.**

No. 93–1053.

Court of Appeals of Iowa.

Jan. 25, 1994.

Philip M. Reisetter, Iowa City, for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., Judy Sheirbon, Asst. Atty. Gen., and Deborah Farmer Minot, Asst. County Atty., for appellee-State.

Sally Weyer, Iowa City, for appellees-minor children.

Heard by SACKETT, P.J., HABHAB, J., and PETERSON, Senior Judge.*

HABHAB, Judge.

The mother, T.W., appeals the termination of her parental rights to two of her children, C.W., born January 30, 1986, and S.W., born April 5, 1990.[1] We affirm.

On July 4, 1991, T.W. and the children went to New Mexico and were staying with Mr. and Ms. Schupp. One week later, the children were removed from their mother's custody after the Schupps' reported the mother physically and verbally abused the children. Ms. Schupp told the investigator the incident had occurred after Ms. Schupp asked T.W. to discipline the children after

S.W. had been pulling out drawers and getting into closets. T.W. then became very angry and threw S.W. into the couch. T.W. continued to scream at S.W. throughout the afternoon. When C.W. attempted to intervene, S.W. grabbed her and forced her down, got on top of her and beat her with closed fists about her face, arms and chest area. When the investigator asked T.W. about the incident, she admitted she lost her temper and she had thrown S.W. into the couch and struck T.W.

On July 17, 1991, T.W. returned to Iowa without the children. On July 31, 1991, petitions to find C.W. and S.W. children in need of assistance were filed in Iowa.

The children returned to Iowa on September 26, 1991, and were placed in foster care. On October 22, 1991, C.W. and S.W. were adjudicated children in need of assistance (CINA) as defined in Iowa Code section 232.-2(6)(b) pursuant to the parties' stipulation.

During the investigation in New Mexico, authorities learned that in 1989, while living in Iowa, T.W. had thrown C.W. on the ground and had broken her leg. T.W. admitted C.W. had been playing with a kitten at the home of one of T.W.'s friends. The friend asked T.W. to discipline the child to prevent her from harming the kitten. When the friend suggested to T.W. she had not sufficiently disciplined C.W., T.W. got mad and grabbed C.W. and said something to the effect of "I'll show you what discipline is," then threw C.W. on the ground. A founded abuse report was filed with regard to this incident in November of 1991.

On November 22, 1991, following a disposition hearing, and by agreement of all parties, the children were placed in the custody of the Iowa Department of Human Services (DHS) for the purpose of continuing foster care. The New Mexico records were made part of the record without objection. The juvenile court adopted the case permanency plan pursuant to which T.W. was to establish a safe and appropriate home, visit regularly with the children, commit no further child

---

* Senior judge from the 1st Judicial District serving on this court by order of the Iowa Supreme Court.

1. C.W.'s father is deceased. S.W.'s two putative fathers (one issue in the termination proceeding was which of two men was S.W.'s father) did not appeal the termination of their parental rights.

abuse and learn to handle her anger, maintain employment and a stable lifestyle, participate in parenting services, counseling, psychological evaluation and recommendations, and learn to budget money.

Review hearings were held in May and December 1992. All parties continued to agree that the children should remain in foster care. On February 17, 1993, the State filed petitions to terminate T.W.'s parental rights, alleging "T.W. has failed to make sufficient or sustained progress on the case plan such that the children could be returned home." Hearing was held on March 30 and 31, 1993.

T.W. admitted in New Mexico she hit C.W. on the shoulder and that in 1989 she had thrown C.W. to the ground, breaking her leg. However, she testified she loved her children; had learned to control her anger and temper outbursts and had not hit her children since they returned from New Mexico; had found a home suitable for the children; had attended visitations and counseling sessions; and had maintained steady employment.

The juvenile court found T.W. had made progress, but that if the children were returned to her custody they would face an unacceptable risk of physical, verbal, and mental abuse. T.W.'s parental rights to both children were terminated pursuant to Iowa Code section 232.116(1)(c) (1991) (previous CINA adjudication after finding physical or sexual abuse or neglect and circumstances remain despite services) and 232.116(h) (CINA based on finding of physical or sexual abuse or neglect and imminent harm of same despite services). As to S.W. only, T.W.'s rights were also terminated pursuant to 232.-116(g) (under three years, previous CINA, removed from home six to twelve months, and cannot be returned to parent's custody). T.W. appeals.

■ Our review of termination proceedings is de novo. *In re W.G.*, 349 N.W.2d 487, 491 (Iowa 1984) *cert. denied sub nom. J.G. v. Tauke*, 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985). We give weight to the findings of fact of the juvenile court, especially when considering the credibility of witnesses, but we are not bound by those determinations. *Id.* at 491–92.

■ The primary concern in termination proceedings is the best interest of the child. Iowa R.App.P. 14(f)(15); *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981).

We look to the child's long-range, as well as immediate, interests. We consider what the future holds for the child if returned to his or her parents. Insight for this determination can be gained from evidence of the parent's past performance, for that performance may be indicative of the quality of the future care the parent is capable of providing. Our statutory termination provisions are preventative as well as remedial. They are designed to prevent probable harm to a child.

*In re R.M.*, 431 N.W.2d 196, 199 (Iowa App. 1988) (citing *Dameron*, 306 N.W.2d at 745).

Iowa Code section 232.116(1)(c) (1991) permits the juvenile court to terminate the parent-child relationship if the court finds both of the following have occurred:

(1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.

(2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

T.W. admits having hit C.W. However, she claims that she has never harmed S.W. and the 1991 CINA adjudication failed to establish the requisite finding of physical abuse. Consequently, T.W. contends there are no grounds upon which termination of S.W. can be based. We find no merit in this argument.

At the CINA adjudication the parties' stipulated to the allegations in paragraph 4(a). Paragraph 4(a) of the petition alleged:

4.(a).  On July 12, 1991, [C.W.] and [S.W.] were removed from the custody of their mother, [T.W.], by officers of the Clovis, New Mexico Police Department through process of an emergency removal.  The emergency removal occurred after T.W. verbally and physically abused the children while residing as a house guest of Amy Schupp in Clovis, New Mexico.  New Mexico authorities wish to return the children to Iowa as soon as appropriate services and protection [are] available.  They request that the children be placed in foster family care in Iowa for the children's protection.

■ We find it irrelevant for this termination proceeding whether T.W. physically abused only C.W. because under Iowa Code section 232.116(1)(c) since C.W. and S.W. are half-siblings, we find the adjudication based on T.W.'s abuse of C.W. satisfies the language of (1)(c) that "the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such [an abuse] finding."

■ T.W. also contends the State has failed to show by clear and convincing evidence the circumstances which led to the adjudication still exist.

Since the children's removal, T.W. has participated in numerous services to facilitate the return of the children to the household. Lutheran Social Services has provided in-home services to the mother and, along with DHS, has participated in supervised visits of the children.  Family Services, Inc. has also provided services to help T.W. to learn parenting skills and control her temper.  In addition, T.W. has undergone psychological counseling at Seashore Clinic.  T.W. states she cannot think of any services that she needs that have not been provided.

Despite all the services provided by the different agencies, T.W. is still unable to control her temper.  Service providers testified that while T.W. had made progress in several of the case plan goals, the children would probably be physically or emotionally abused if returned to her care.  They also testified that T.W. did not display affection to the children and there appeared to be minimal bonding.  T.W.'s individual counselor testified that on a scale of anger control of one to ten, T.W. had reached about a two and one-half or three.  The worker who currently supervised visitation between T.W. and the children testified that she had intervened on several occasions when she believed the children were at risk of harm from T.W.

We find clear and convincing evidence C.W. and S.W. cannot be returned to the custody of T.W.  We find the statutory grounds for terminating T.W.'s parental rights to C.W. and S.W. pursuant to Iowa Code section 232.116(1)(c) have been met. We, therefore, need not decide whether there are statutory grounds for terminating the mother's parental rights pursuant to other sections.

■ Having determined there is clear and convincing evidence to support the termination, we look now to whether the best interests of the children would be served by terminating T.W.'s parental rights.

Our supreme court has said a child should not be forced to endlessly suffer the parentless limbo of foster care.  *In re D.J.R.*, 454 N.W.2d 838, 845 (Iowa 1990).  To continue to keep children in temporary foster homes is not in their best interests.  *In re J.L.P.*, 449 N.W.2d 349, 353 (Iowa 1989).

It is unlikely in the foreseeable future this mother will be able to protect these two children from child abuse.  C.W. and S.W. have already been in foster care for two and one-half years.  The evidence shows ongoing contact with T.W. has a negative effect on C.W.'s behavior.  The children's therapist, Ms. Betty King, found C.W. was attached to the foster parents and would grieve if she was removed from them.  Ms. King felt C.W. needed permanency in her life which T.W. could not provide.

We agree with the juvenile court.  The best interest of these two children would be served by terminating their mother's parental rights.  We affirm the juvenile court's decision to terminate T.W.'s parental rights.

**AFFIRMED.**

PETERSON, Senior Judge, concurs.

SACKETT, P.J., specially concurs.

SACKETT, Presiding Judge (concurring specially)

I concur with the majority opinion.

The majority cites:

A child should not be forced to endlessly suffer the parentless limbo of foster care. *In re D.J.R.*, 454 N.W.2d 838, 845 (Iowa 1990); *In re L.M.F.*, 490 N.W.2d 66, 68 (Iowa App.1992).

I, like the majority, believe children should not have to spend their childhood years in foster care. Where I depart from the major-ity is that termination of a child's parental rights provides no guarantee they will not remain in foster care. In 1992, of the 263 special-needs children freed for adoption, only 138 were adopted. *See* Phoebe Wall Howard, *Special-needs Kids Pray for New Families, New Lives*, Des Moines Sunday Register, Oct. 10, 1993, at 1A.