IBP, INC., Appellant,

v.

Raad AL–GHARIB, Appellee.

No. 98–1623.

Supreme Court of Iowa.

Jan. 20, 2000.

Christopher J. Godfrey, Dakota City, Nebraska, for appellant.

Mark W. Fransdal of Redfern, Mason, Dieter, Larsen & Moore, P.L.C., Cedar Falls, for appellee.

Considered by LARSON, P.J., and LAVORATO, SNELL, TERNUS, and CADY, JJ.

LAVORATO, Justice.

In this workers' compensation case, which we transferred to the court of appeals, we must decide three issues: (1) whether the court of appeals erred in dismissing the claimant's cross-appeal challenging the commissioner's refusal to admit a psychologist's testimony; (2) whether the district court was correct in concluding that the commissioner abused her discretion in refusing to consider the psychologist's testimony; and (3) whether the district court was correct in upholding the commissioner's decision that the claimant was permanently and totally disabled. We conclude (1) the court of appeals erred in dismissing the claimant's cross-appeal, and (2) the district court was correct on the evidentiary and the disability rulings. We therefore vacate the court of appeals decision, affirm the district court decision, and remand.

## I. Background Facts and Proceedings.

Raad Al–Gharib is forty-three years old and was born and educated in Iraq. He went through middle and technical school. He worked as a welder for six to seven years making windows and fences from iron.

Political conditions in Iraq forced Raad to leave, and eventually he arrived in this country as a political refugee. He settled in Iowa and was hired by IBP, Inc. in March 1993.

At IBP, Raad pulled casings. To do so, he used a vibrating knife in his right hand and separated intestines from fat with his other hand. He did this eight hours a day, with a fifteen-minute break in the morning and a thirty-minute break for lunch.

Raad started having pain in his upper right side in October or November 1993. He reported the pain to his supervisor,

who sent him to the company's dispensary, where he was given lotion and tablets to resolve muscle tension. A few weeks later, Raad again visited the dispensary with similar complaints and received the same medical treatment.

Raad's pain became worse and eventually he was referred to Allen Memorial Hospital for an occupational health analysis. Dr. James H. Jeffries prescribed medication and treatment and placed a temporary restriction on Raad, directing him not to use his right arm. IBP placed him on light duty. Raad's pain persisted, and the doctors at Allen Memorial Hospital recommended he limit use of his right arm and work in a warm environment.

During early 1994, Raad's pain persisted. Despite his pain, complaints, and previous work restrictions, IBP continued to assign Raad to various jobs that required him to use both arms and to work in cold environments. Raad quit his employment in April 1994. Job Services of Iowa concluded that Raad had quit his job with good cause attributable to the employer and was therefore entitled to unemployment compensation benefits. The agency found that IBP knew Raad's medical restrictions but refused to abide by them.

Because he was unable to work, Raad had to sell his house and go on welfare and rental assistance. Raad testified that his inability to work and his dependance on welfare assistance and supplemental social security benefits were very demeaning to him.

Raad also sought medical assistance at the Peoples Clinic, which referred him to the University of Iowa Hospitals and Clinics. The doctors who have treated Raad agree he has a right-side impairment and chronic myofascial pain. Several of these doctors also agree that Raad is limited in terms of lifting, overhead work, and any repetitive motion with his right upper extremity.

One doctor opined that until Raad heals or starts using his right arm, Raad is virtually unemployable and that Raad's condition may progress to a disuse syndrome. A disuse syndrome is a reflex sympathetic dystrophy. The same doctor, however, gave Raad a functional impairment of only six percent of his right upper extremity. Another doctor gave Raad a functional impairment of four percent of his right upper extremity.

In June 1995 Raad sought help for depression and adjustment disorder from a psychologist, Dr. James H. Harding, at the Black Hawk Grundy Mental Health Center. The University of Iowa Hospitals and Clinics made the referral. Harding testified that Raad's work injury was a major contributing factor in causing Raad's psychological problems.

Lee Ann Russo, a counselor with the State of Iowa Vocational Rehabilitation Department, began working with Raad in March 1995. Russo, who has a Master's Degree in counseling, determines whether an individual has a disability and is therefore eligible for rehabilitative services. To be eligible for such services (1) an individual must have a medical diagnosis indicating the individual has a substantial handicap or barrier to employment and (2) there must be services available that can help the individual. According to Russo, Raad's medical condition made him eligible for services from the department. Russo considers Raad to be severely disabled and believes he could not compete in the competitive job market. In May 1995 a Goodwill Industries Vocational Evaluation concluded that Raad was not employable at that time.

Raad filed a workers' compensation claim against IBP, seeking disability benefits for injuries to his neck, upper back, right shoulder, and right upper extremity, which he claimed he suffered as the result of a work-related repetitive trauma in November 1993. Later, Raad also alleged that he suffered a mental injury (depression), which he claimed was causally connected to his physical injury.

The deputy commissioner found that Raad suffered a physical and mental injury as a result of the work Raad did for IBP. The deputy concluded Raad was permanently and totally disabled as a result of these injuries.

IBP appealed this decision to the commissioner. The commissioner concluded that a psychologist is not a physician under Iowa law and therefore not qualified to express an opinion causally connecting a mental condition to a work injury. For this reason, the commissioner ignored Harding's testimony causally connecting Raad's mental condition to his work injury. Without Harding's testimony, there was no expert evidence to make the connection. The commissioner therefore found the evidence was insufficient to support a finding that Raad's mental condition was work-related. Nevertheless, the commissioner concluded that Raad was permanently and totally disabled.

IBP filed a petition for judicial review in the district court, contending there was insufficient evidence to sustain a finding of permanent and total disability. In his answer to the petition, Raad alleged that the commissioner erred in excluding medical testimony of a psychologist regarding Raad's alleged mental injury and in finding that such injury was not work-related.

The district court interpreted the commissioner's ruling as a finding that Raad's physical injury had caused permanent and total disability and upheld the ruling. The court concluded that in light of its ruling there was no need for the court to consider Raad's mental injury claims.

Raad filed an Iowa Rule of Civil Procedure 179(b) motion asking the district court to address the mental-injury issue because (1) IBP had not paid substantial medical bills for psychological counseling and treatment and (2) there would be on-going medical care that IBP would be required to pay. The district court informed the parties that it would issue a ruling on the motion when the court returned from vacation. Before the court could rule, IBP appealed. Raad cross-appealed.

After the appeal and cross-appeal, the district court issued its ruling on Raad's rule 179(b) motion. The court ruled that the commissioner had erred in concluding that a psychologist is not qualified under Iowa law to give a medical opinion on causation. The court therefore concluded that the commissioner had abused her discretion in not considering Harding's testimony. The court remanded the case to the commissioner for reconsideration of Harding's testimony and what effect, if any, that testimony would have on the commissioner's ruling regarding Raad's mental condition.

Meanwhile, we transferred the case to the court of appeals. The court of appeals concluded that, by cross-appealing before the district court had ruled, Raad waived the issues in his rule 179(b) motion and in his cross-appeal from the district court ruling. The court also concluded that, although IBP's appeal was premature, Raad's waiver cured the interlocutory nature of IBP's appeal.

In its appeal, IBP argued that, in determining whether Raad suffered permanent and total disability, the commissioner had relied on factors (headaches and depression) not supported by the evidence. The court of appeals concluded it was not clear whether the commissioner had in fact relied on these factors. Accordingly, the court reversed and remanded the matter to the commissioner "for clear application of the appropriate factors as outlined in" prior cases.

We granted Raad's application for further review. He contends the court of appeals erred in concluding he waived the issues in his rule 179(b) motion and in his cross-appeal from the district court ruling. He also contends the commissioner abused its discretion in excluding Harding's testimony on the question whether his mental condition was causally connected to his work injury. Finally, Raad contends there

was sufficient evidence to support the commissioner's finding that, because of his work-related physical injury, he was permanently and totally disabled, and for that reason, the court of appeals erred in reversing and remanding on this issue.

## II. Scope of Review.

■■■ Iowa Code chapter 17A governs review of this workers' compensation decision. *See* Iowa Code § 86.26 (1997). When exercising its power of judicial review under Iowa Code section 17A.19(8), the district court acts in an appellate capacity to correct errors of law on the part of the agency. *Teleconnect Co. v. Iowa State Commerce Comm'n*, 404 N.W.2d 158, 161 (Iowa 1987). The court may affirm the agency action or remand to the agency for further proceedings. Iowa Code § 17A.19(8). The court shall reverse, modify, or grant any other appropriate relief from the agency action if substantial rights of the petitioner have been prejudiced because of such action. *Id.* In our review of the district court's decision, we apply the standards of section 17A.19(8) to the agency action to determine whether our conclusions are the same as those of the district court. *Teleconnect*, 404 N.W.2d at 162.

## III. The Cross–Appeal.

■ **A. The jurisdictional issue.** The district court issued its ruling in this case on August 4, 1998. On August 15 Raad filed his rule 179(b) motion, asking the district court to rule on the mental issue. The filing tolled the thirty-day time limit for appeal until the district court ruled on the motion. *See* Iowa R.App. P. 5 (providing that time for appeal is thirty days from order, judgment, or decree unless motion for new trial, judgment notwithstanding the verdict, or rule 179(b) motion is filed, and then within thirty days after the ruling on the motion); *Office of Consumer Advocate v. State Commerce Comm'n*, 395 N.W.2d 1, 6–7 (Iowa 1986) (holding that rule 179(b) motion is permitted after a judicial review decision in a contested case and operates to toll the time for appeal).

On September 1 the district court wrote to the parties informing them that the court would rule on Raad's motion when the court returned from vacation. However, before the court could rule on the motion, IBP filed its notice of appeal on September 3. Raad filed his notice of cross-appeal on September 8. The district court ruled on Raad's motion on October 13.

This procedural history prompted the court of appeals on its own motion to rule that by filing his cross-appeal on September 8, Raad (1) waived the issues raised in his rule 179(b) motion and (2) cured the premature or interlocutory nature of IBP's appeal. The court therefore considered IBP's appeal to be one from a final judgment and refused to consider the issues in Raad's cross-appeal.

■ Our rules of appellate procedure permit, as a matter of right, appeals to this court of "[a]ll final judgments and decisions of the district court." Iowa R.App. P. 1(a). The rules prohibit appeals of interlocutory rulings or decisions unless this court has granted permission for such an appeal. Iowa R.App. P. 1(c). Obtaining this permission is jurisdictional. *In re Marriage of Graziano*, 573 N.W.2d 598, 599 (Iowa 1998).

■ A final judgment or decision is

one that finally adjudicates the rights of the parties, and it must put it beyond the power of the court which made it to place the parties in their original positions. It is a determination which may be enforced by execution or in some similar manner.

*Wesley Retirement Servs., Inc. v. Hansen Lind Meyer, Inc.*, 594 N.W.2d 22, 28 (Iowa 1999). In contrast, " 'a ruling is interlocutory if it is not finally decisive of the case.' " *Recker v. Gustafson*, 271 N.W.2d 738, 739 (Iowa 1978) (quoting *Helland v.*

*Yellow Freight System,* Inc., 204 N.W.2d 601, 604 (Iowa 1973)).

Whether we will grant an interlocutory appeal depends on whether the judgment or decision

> involves substantial rights and will materially affect the final decision and that a determination of its correctness before trial on the merits will better serve the interests of justice.

Iowa R.App. P. 2(a). The order granting the appeal stays further proceedings. Iowa R.App. P. 2(b).

■ Once an appeal is perfected, the appellate court has jurisdiction. Iowa R.App. P. 6(a) (providing that an appeal is taken and perfected by filing a notice of appeal with the clerk of court where the order, judgment or decree was entered); *In re Estate of Herron,* 561 N.W.2d 30, 32 (Iowa 1997); *Wolf v. City of Ely,* 493 N.W.2d 846, 848 (Iowa 1992). At the same time, the district court loses jurisdiction over the merits of the controversy and may not consider any posttrial motions filed after the notice of appeal. *Herron,* 561 N.W.2d at 32 (holding that, once a notice of appeal had been filed by the defendant, the district court lacked jurisdiction to consider a rule 179(b) motion subsequently filed by the plaintiffs).

■■ When a posttrial motion—such as a rule 179(b) motion, motion for judgment notwithstanding the verdict, and motion for new trial—is pending *before* an appeal is taken, the judgment or decision to which the motion is addressed is interlocutory until the district court rules on the motion. *Wolf,* 493 N.W.2d at 848. Therefore, if the nonmoving party appeals while the motion is pending, the appeal is premature because (1) the appeal was not taken from a final judgment and (2) permission for such an interlocutory appeal had not previously been granted by this court. *See Graziano,* 573 N.W.2d at 599; *Recker,* 271 N.W.2d at 739. In this situation, this court is without jurisdiction to hear the case and must therefore dismiss the appeal. *Id.*

■ At the time this court decided *Recker,* our appellate rules required dismissal of improvidently filed appeals. We have since amended appellate rule 1 to soften some of the harshness of the rule. *See* 1980 Iowa Acts ch. 1209; *Graziano,* 573 N.W.2d at 599–600. Our rules now provide that

> [i]f an appeal to the supreme court is improvidently taken because the order from which the appeal is taken is interlocutory, this alone shall not be ground for dismissal. The papers upon which the appeal was taken shall be regarded and acted upon as an application for interlocutory appeal under Iowa Rule of Appellate Procedure 2, as if duly presented to the supreme court at the time the appeal was taken.

Iowa R.App. P. 1(d). Therefore, as the rule now stands, an improvidently filed appeal, while still interlocutory, is no longer subject to automatic dismissal. *See Wesley,* 594 N.W.2d at 28–29. Instead, whether such an appeal may be permitted is subject to the requirements of appellate rule 2(a) (providing that interlocutory appeals may be granted when (1) ruling involves substantial rights and will materially affect the final decision and (2) determination of ruling's correctness before trial will better serve interests of justice). *See id.* Nevertheless, obtaining permission for an interlocutory appeal is still jurisdictional. *See Graziano,* 573 N.W.2d at 599.

■ When the party who has filed a posttrial motion appeals, no jurisdictional problem arises. Rather, we consider the movant-appellant's appeal as having been taken as a matter of right. However, in these circumstances, the appellant is deemed to have waived and abandoned the posttrial motion. Additionally, once the appeal is perfected, the district court loses jurisdiction to rule on the motion, and any such ruling has no legal effect. *See Herron,* 561 N.W.2d at 32.

Arguably, the waiver rule should apply to a party who files a posttrial motion and

then cross-appeals from the judgment or decision—the very situation we have here. This is because there is no significant difference between an appeal and cross-appeal; both seek to correct or reverse an error committed by the district court. The difference in terminology simply identifies which party appealed first. Although this court has not expressly applied the waiver rule in the context of a cross-appeal, we have applied the error preservation rule in such a context with the same result—dismissal of the cross-appeal. *See Blunt, Ellis & Loewi, Inc. v. Igram*, 319 N.W.2d 189, 195 (Iowa 1982) (dismissing plaintiff's cross-appeal that challenged district court's failure to award prejudgment interest because plaintiff failed to preserve error by not obtaining a ruling on its posttrial motion to modify judgment to include such interest).

Therefore, our appellate rules and our cases interpreting these rules seemingly permit a party like IBP, who files a notice of appeal while a posttrial motion is pending, to take advantage of its improvident appeal by forcing the moving party to cross-appeal and thereby waive the issues in the posttrial motion. The moving party is forced to appeal because of the five-day limit for cross-appeals under Iowa Rule of Appellate Procedure 5(a) (providing that "[a] cross-appeal may be taken within the thirty days for taking an appeal or in any event within five days after the appeal is taken"). Failure to cross-appeal within the five-day period, of course, deprives this court of jurisdiction to hear the cross-appeal. *Hulsing v. Iowa Nat'l Mut. Ins. Co.*, 329 N.W.2d 5, 7 (Iowa 1983).

The court of appeals acknowledged that Raad likely felt compelled to cross-appeal because of the short time limit for cross-appeals. Nevertheless, the court held that Raad waived the issues in his rule 179(b) motion by cross-appealing. Instead of cross-appealing, the court suggested Raad should have either (1) moved to dismiss the appeal under Iowa appellate rule 23 or (2) asked for limited remand to allow the

district court to rule on his motion under Iowa appellate rule 12(g).

We agree with Raad that there was no guarantee this court would have dismissed the appeal or remanded. Without a favorable ruling as to either remedy within the five-day period for cross-appealing, any subsequent cross-appeal by Raad would obviously have been untimely. Given the procedural circumstances of this case, we will not interpret our appellate rules to permit such an obviously unfair and absurd result, a result brought about because of IBP's improvident appeal. *Cf. State v. Perry*, 440 N.W.2d 389, 391 (Iowa 1989) (holding that, when statutory language appears fairly certain but adherence to the strict letter of the law leads to injustice, absurdity, or contradiction, the court may look to another meaning).

Waiver is the *voluntary* relinquishment of a known right. *Travelers Indem. Co. v. Fields*, 317 N.W.2d 176, 186 (Iowa 1982). Because Raad felt compelled to cross-appeal due to IBP's improvident appeal, we can hardly say he waived the issues in his rule 179(b) motion.

 The facts of this case convince us that we should consider as interlocutory a notice of cross-appeal filed in response to an improvidently taken notice of appeal. We now hold that a notice of cross-appeal filed under such circumstances does not act as a waiver of the cross-appealing party's posttrial motion unless an explicit waiver of the motion is contained in the notice. Both the interlocutory notice of appeal and cross-appeal are therefore subject to this court's discretion to accept or decline the appeal under Iowa Rule of Appellate Procedure 1(d). We disavow anything to the contrary in *Blunt*, 319 N.W.2d at 195.

Here, we think the interlocutory appeal should be granted as to both notices. Because there was not a valid appeal as a matter of right on file and this court had not granted interlocutory appeal or otherwise stayed further district court proceed-

ings, the district court was not deprived of jurisdiction to address the pending posttrial motion. Given the district court's ruling on the motion, we see no reason to remand at this point and instead consider the court's ruling to be part of the record on appeal. *See* Iowa R.App. P. 10(d).

**B. The merits.** As mentioned, Raad challenged the commissioner's decision excluding Harding's testimony connecting Raad's mental condition to the work-related injury. Raad made the challenge because without that testimony there was no expert testimony connecting his mental condition to the work-related injury. This absence of testimony led the commissioner to reject Raad's claim that his mental condition was work-related and to disallow Raad's expenses relating to that condition. Like the district court, we recognize that we must address the exclusion-of-evidence issue because Raad is seeking expenses related to the mental condition.

The district court resolved Raad's claim that the commissioner abused her discretion in excluding Harding's testimony under the provisions of Iowa Code section 17A.19(8)(g). This provision provides that a court shall reverse or grant any other appropriate relief from agency action when that action is "characterized by an abuse of discretion." Iowa Code § 17A.19(8)(g). An abuse of discretion occurs only when the district court exercised its discretion on untenable grounds or its exercise of discretion was clearly erroneous. *Brunner v. Brown*, 480 N.W.2d 33, 37 (Iowa 1992). This same standard applies in administrative proceedings. *Frank v. Iowa Dep't of Transp.*, 386 N.W.2d 86, 87–88 (Iowa 1986) (holding that abuse-of-discretion standard under Iowa Code section 17A.19(8)(g) is the same as in reviewing the exercise of the district court's discretion).

In refusing to consider Harding's testimony on the causal connection between Raad's work injury and his mental condition, the commissioner stated:

> A psychologist is not a physician [Iowa Code section 135.1(4)], and thus is not qualified to express an opinion causally connecting a work injury to a mental condition. The proof of a causal connection between a work injury and an alleged mental disability is dependent upon medical opinion. That medical opinion cannot only be the opinion of a psychologist.

(Citations omitted.)

The commissioner, therefore, concluded that psychologists as a group are not competent to give an opinion on the causal connection between a work injury and a mental condition simply because they are not physicians under Iowa law.

In administrative proceedings, statutory law allows the fact finder to base a finding

> upon the kind of evidence on which reasonably prudent persons are accustomed to rely for the conduct of their serious affairs, and may be based upon such evidence even if it would be inadmissible in a jury trial.

Iowa Code § 17A.14(1). We have recognized that this provision is in harmony with the general rule that administrative agencies are not bound by technical rules of evidence. *See McConnell v. Iowa Dep't of Job Serv.*, 327 N.W.2d 234, 237 (Iowa 1982). We therefore start from the premise that the scope of evidence in administrative proceedings which an agency may consider is expanded rather than contracted. *See, e.g., Gaskey v. Iowa Dep't of Transp.*, 537 N.W.2d 695, 698 (Iowa 1995) (holding that hearsay evidence may constitute substantial evidence to support a factual finding in an administrative proceeding).

Turning to our cases outside of administrative proceedings, we note that Iowa follows a liberal rule on the admission of opinion testimony. *See Hutchison v. American Family Ins. Co.*, 514 N.W.2d

882, 885 (Iowa 1994). In *Hutchison*, we recognized that Iowa Rule of Evidence 702 codifies this liberal approach. *See id.* Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Also in *Hutchison*, we rejected the argument that a clinical psychologist could not render an opinion disputing a causal connection between a car accident and plaintiff's brain injury. *See id.* at 887–88. We see no reason why the same liberal approach should not apply in administrative proceedings in which presumably the rules of evidence are even more liberal than they are in the district court.

■■■ The district court correctly rejected the commissioner's conclusion that the fact psychologists are not considered physicians under the definition of physician in Iowa Code section 135.1(4) renders them incompetent to give opinions about causation of a psychological condition. The district court's rejection of this conclusion finds support in *Hutchison* in which we said: "The criteria for qualification under rule 702—knowledge, skill, experience, training, or education—are too broad to allow distinctions based on whether or not a proposed expert belongs to a particular profession or has a particular degree." *Hutchinson,* 514 N.W.2d at 887–88; *see also Ganrud v. Smith,* 206 N.W.2d 311, 315–16 (Iowa 1973) (holding that an expert—in this case a physiologist—need not be a physician to give opinion testimony on the probability of loss of memory following head injury and a long period of unconsciousness).

■■■ We also agree with the district court that admission of such testimony is, however, left to the discretion of the commissioner. Here, the blanket exclusion of testimony from psychologists on the causation issue meant the commissioner failed to exercise her discretion on whether to admit or not to admit Harding's testimony. Because the commissioner had discretion to either admit or not to admit the testimony, the commissioner was required to exercise it. However, she failed to exercise that discretion but, instead, merely applied an erroneous rule of evidence to exclude the testimony. A failure to exercise discretion is an abuse of discretion. *Sullivan v. Chicago & N.W. Transp. Co.,* 326 N.W.2d 320, 328 (Iowa 1982). The blanket exclusion also prejudiced Raad's rights because Harding's opinion was the only testimony that the mental condition was work-related.

As the district court pointed out, apart from the blanket exclusion, the commissioner may still determine Harding's qualifications insufficient to allow his opinion testimony on the causation issue. This is because the commissioner as a fact finder must make the initial determination under rule 702 whether the witness meets the threshold requirements of the rule.

■■■ Even if Harding's opinion testimony on causation is admitted, the commissioner may accept or reject it in whole or in part. *See Sherman v. Pella Corp.,* 576 N.W.2d 312, 321 (Iowa 1998). This is because the commissioner, as the fact finder, determines the weight to be given to any expert testimony. *Id.* Such weight depends on the accuracy of the facts relied upon by the expert and other surrounding circumstances. *Id.* But if the commissioner rejects Harding's testimony after admitting it, she must say why she did so, if that testimony is uncontroverted. *See Catalfo v. Firestone Tire & Rubber Co.,* 213 N.W.2d 506, 510 (Iowa 1973). Otherwise, this court has no way of determining whether the commissioner acted arbitrarily or misapplied the law. *See id.*

Like the district court, we reject IBP's argument that Iowa Code section 17A.14(5) supports the commissioner's blanket exclusion of testimony from psy-

632

chologists on the causal connection between a mental condition and a work-related injury. Section 17A.14(5) provides that "[t]he agency's experience, technical competence, and specialized knowledge may be utilized in the evaluation of evidence." As the district court emphasized, the agency's experience is to be "utilized in the evaluation of the evidence." The district court correctly concluded that the blanket exclusion kept the commissioner from evaluating Harding's opinion testimony on causation, which was evidence that Raad had presented. If Harding's opinion testimony is admitted, the commissioner can and should use her particular expertise in deciding the weight to be given it.

For all these reasons, we conclude the district court correctly determined that the commissioner abused her discretion in her blanket exclusion of all opinion testimony from psychologists on the question whether there is a causal connection between a work-related injury and a mental condition. We affirm the district court's reversal of the commissioner's ruling on this issue. We also affirm the district court's remand of the case to the commissioner for reconsideration of the admissibility of Harding's testimony on the causation issue and what effect, if any, that testimony may have on the question whether the mental condition is causally connected to the work injury.

## IV. The Appeal: Whether Substantial Evidence Supports the Finding of Permanent and Total Disability.

IBP contends there was not substantial evidence to support the commissioner's finding that Raad was permanently and totally disabled as a result of the November 1993 injury. In support of this contention, IBP argues that, in making this finding, the commissioner relied on medical conditions (headaches and depression) that the commissioner specifically found were not work-related.

The district court resolved IBP's petition for judicial review under Iowa Code section 17A.19(8)(f), which provides that a court may grant appropriate relief from agency action when that action is, "in a contested case, unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole." Iowa Code § 17A.19(8)(f). An agency's findings of fact are binding on the courts when they are supported by substantial evidence. *Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 913 (Iowa 1987). And the courts should broadly and liberally apply those findings to uphold rather than to defeat the agency's decision. *Ward v. Iowa Dep't of Transp.*, 304 N.W.2d 236, 237 (Iowa 1981). " 'Evidence is not insubstantial merely because it would have supported contrary inferences. It is substantial when a reasonable mind could accept it as adequate to reach the same findings.' " *Norland*, 412 N.W.2d at 913 (quoting *New Homestead v. Iowa Dep't of Job Serv.*, 322 N.W.2d 269, 270 (Iowa 1982)). The determining factor is not whether the evidence supports a different finding but whether the evidence supports the finding actually made. *City of Hampton v. Iowa Civil Rights Comm'n*, 554 N.W.2d 532, 536 (Iowa 1996).

In her ruling, the commissioner found that "the greater weight of the medical evidence establishes that [Raad's] impairment as a result of his work injury extends beyond the arm and into the body as a whole." Consequently, the commissioner concluded that Raad's disability would be "analyzed industrially." The commissioner arrives at industrial disability by determining the loss to the employee's earning capacity. *Sherman*, 576 N.W.2d at 321.

In determining Raad's industrial disability, the commissioner relied on the following factors taken from *McSpadden v. Big Ben Coal Co.*, 288 N.W.2d 181, 192 (Iowa 1980): the employee's medical condition prior to the injury, immediately after the

injury, and presently; the situs of the injury, its severity and the length of the healing period; the work experience of the employee prior to the injury and after the injury and the potential for rehabilitation; the employee's qualifications intellectually, emotionally, and physically; earnings prior and subsequent to the injury; age; education; motivation; functional impairment as a result of the injury; inability, because of the injury, to engage in employment for which the employee is fitted; loss of earnings caused by a job transfer for reasons related to the injury; and the employer's refusal to give any sort of work to an impaired employee.

█ As the commissioner noted, "[t]otal disability does not mean a state of absolute helplessness." Such disability occurs when the injury wholly disables the employee from performing work that the employee's experience, training, intelligence, and physical capacities would otherwise permit the employee to perform. *Diederich v. Tri–City Ry.*, 219 Iowa 587, 593–94, 258 N.W. 899, 902 (1935).

The commissioner made several findings that are at the root of IBP's complaint that she relied on medical conditions which she specifically found were not work-related and for which she awarded no benefits. One such finding related to headaches:

In March of 1995, [Raad] also sought treatment at the University of Iowa Hospitals for sinus and allergy complaints. Dr. Barcellos determined that [Raad's] headaches were histamine headaches. The headaches prompted [Raad] to quit going to his college classes.

Later, the commissioner found that "there is no medical opinion that any of this pain [from the headaches] was caused by [Raad's] work injury to his arm."

As mentioned, the commissioner did not admit Harding's opinion testimony on the causal connection between Raad's depression and his work injury. The commissioner concluded that, because there was no other medical testimony on the causal connection, Raad had failed to carry "his burden of proof to show that his depression is causally related to his work injury."

Immediately following this finding, the commissioner noted:

[E]ven if [Raad] had carried his burden of proof, his depression is described by all physicians who noted it as "mild." [Raad's] present disability appears to be more due to his right arm and shoulder pain, and his *headaches*, than his depression.

(Emphasis added.)

Later, in her ruling, the commissioner concluded:

[Raad] relies on the opinion of Dr. Harding that he is unable to work, and on the opinion of vocational rehabilitation counselor Russo, who also stated that [Raad] was presently unemployable. Dr. McMains on July 12, 1994 said that until [Raad's] arm "heals, or until he starts using it, he is virtually unemployable." On May 26, 1995 a Goodwill Industries Vocational Evaluation concluded that [Raad] was not employable.

*Based on these* and all other factors of industrial disability, it is found that [Raad] is permanently and totally disabled.

(Emphasis added.)

IBP points out that the opinions from Russo and Goodwill Industries were based in part on (1) Harding's diagnosis that Raad was suffering from depression and (2) Raad's headaches—conditions that the commissioner found were not work-related. Therefore, IBP argues, the commissioner erred by basing her opinion of permanent and total disability in part on medical conditions she earlier determined were not work-related.

█ It is true that the commissioner has a duty to state the evidence she relies on and to detail the reasons for her conclusions. *See Catalfo*, 213 N.W.2d at 510. In addition, she must sufficiently detail her

decision to show the path she has taken through conflicting evidence. *See id.* But, we have held that an agency's decision is sufficient if " 'it is possible to work backward [from the agency's written decision] and to deduce what must have been [the agency's] legal conclusions and [its] findings.' " *Norland,* 412 N.W.2d at 909 (quoting *Ward,* 304 N.W.2d at 239). To do so is to recognize our duty to broadly and liberally apply the commissioner's findings to uphold rather than to defeat the commissioner's decision.

That is the framework of analysis that the district court used and the one we use too. In working backwards, we must first assume the commissioner relied substantially on the physical injury in reaching her conclusion that Raad was permanently and totally disabled and that the injury was work-related. We find support for that assumption in the commissioner's action denying Raad benefits for the medical conditions she found were not work-related. As the district court noted, however, the crucial question is whether there was substantial record evidence to support the finding that Raad was permanently and totally disabled because of the physical injury.

We begin with Harding's deposition testimony. Although the commissioner would not consider Harding's testimony that Raad's mental condition was work-related, she did not similarly reject other parts of his testimony on Raad's physical injury— the right-side impairment. Harding testified he would not recommend that Raad seek full-time employment because of Raad's depressive disorder and his physical condition. A fair reading of that deposition, however, leads us to conclude that Harding believed the pain and discomfort from the right-side impairment was a substantial cause why Raad was unemployable:

> [From my contact with Raad, I think he generally wants to be able to work and be productive.] If we could make

that pain fifty percent less I think we would see him out there working.

> . . . .

> . . . [T]he amount of pain and distress I see in an hour's interview with him sitting here, that if he has to move that much to remain comfortable that means most any job, even if it's taking tickets at a parking place, it is going to be something of a problem. It was my observation of the distress and what to do with his arm and shoulder and so on that I wouldn't have recommended [full-time employment].

> . . . .

> . . . What I am observing is the degree to which he protects that part. He has to move it to not be in pain, sometimes [he] has to get up and walk around or shift his position about every two to three minutes usually.

Russo testified that, because of Raad's physical and psychological condition, Raad was unable to work. A fair reading of Russo's testimony, however, supports a finding that Raad's right-side impairment was a substantial cause, which she believed, made him unemployable:

> Q. How much impairment do you require to be found or reflected in the medical records [to make Raad eligible for rehabilitative services]? A. There are different levels of impairment. Some people we consider most severely disabled. Others we consider severely disabled. And some we consider just disabled. So Raad is considered severely disabled, based on functional limitation in terms of work tolerance, meaning that he can't stand or sit for prolonged periods; he's limited in his range of motion, his dexterity, the work environments that he can be subjected to. And the functional area that limits him is called work tolerance.

> . . . .

> Q. Has [Raad] at any time since you have been working with [him], has he been able to function physically, in your

opinion, which would have allowed him to obtain employment in the competitive employment market on an ongoing basis? A. No.

The Goodwill Industries evaluator wrote in a report that Raad could only work part time because "he starts having pain in his neck and getting headaches." The evaluator, however, stated that Raad's "primary disability is listed as a right side impairment." In addition, the evaluator stated before any further services could be provided to Raad, he would have to get his "pain issue under control." As a fact finder the commissioner could certainly consider this evidence as proof that the right-side impairment was a substantial cause for Raad's disability.

The commissioner noted that Raad's prior work experience and training involved welding and physical labor. The commissioner found that Raad cannot now, nor could he in the future, perform this kind work, or return to the type of work he performed for IBP. There is substantial evidence to support a finding that Raad's right-side impairment and limitations due to such impairment were substantially the reasons for his inability to obtain the type of employment for which he was fitted. The commissioner also found that Raad functions at roughly a ninth-grade level, limiting his ability to obtain other types of employment.

In addition, the commissioner relied on Dr. Kenneth McMains' testimony that, until Raad's arm "heals, or until he starts using it, he is virtually unemployable." McMains was one of the doctors who saw Raad at Allen Memorial Hospital. McMains' opinion mentioned neither Raad's mental condition nor his headaches. The opinion was additional supporting evidence for the conclusion that the right-side impairment was substantially the reason for Raad's disability.

Although she noted that doctors had given Raad a minimal rating of impairment of the right upper extremity (four and six percent), the commissioner appropriately concluded that functional impairment is only one of many factors in determining industrial disability. *See Olson v. Goodyear Serv. Stores*, 255 Iowa 1112, 1120, 125 N.W.2d 251, 256 (1963). Obviously, the commissioner gave that factor little weight. As a fact finder it was her function to determine the weight of the evidence. Given the substantial evidence of Raad's disability, we cannot and should not disturb the commissioner's finding giving limited weight to Raad's functional impairment.

For all these reasons, we conclude that the evidence supports a finding that Raad's disability is substantially the result of his physical, work-related injury. Although a fact finder might have reached a different and inconsistent conclusion from this record, our rules mandate we are nevertheless bound by the conclusion the commissioner reached.

## V. Disposition.

Because we conclude the court of appeals erred in dismissing Raad's cross-appeal and in reversing the district court's decision upholding the commissioner's decision on the physical disability issue regarding Raad's right-side impairment, we vacate the court of appeals decision.

We affirm the district court's posttrial ruling on (1) the evidentiary issue regarding the psychologist's testimony and (2) its remand to the commissioner on this issue. On remand, the commissioner shall first determine, consistent with the principles stated in this opinion, whether Harding is qualified to give an opinion that Raad's mental condition was casually connected to his work-related injury. In making that determination, the commissioner shall consider whether Harding meets the requirements of Iowa Rule of Evidence 702. If the commissioner determines Harding is so qualified, she shall then determine what weight to give that opinion.

Finally, we affirm the district court's decision upholding the commissioner's de-

cision on the physical disability issue regarding Raad's right-side impairment.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**