**IN THE COURT OF APPEALS OF IOWA**

No. 14-0735
Filed December 24, 2014

**IN RE THE MARRIAGE OF DEANN M. SIMON
AND LEO F. SIMON**

**Upon the Petition of
DEANN M. SIMON,**
        Petitioner-Appellee,

**And Concerning
LEO F. SIMON,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Dubuque County, Thomas A.

Bitter, Judge.


        Leo Simon appeals the economic and property distribution provisions of

the decree dissolving his marriage to Deann Simon.  **AFFIRMED.**


        Jeremy L. Thompson of Putnam Law Office, Decorah, for appellant.

        Janette S. Voss of Remley, Willems, McQuillen & Voss, L.L.P., Anamosa,

for appellee.


        Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**PER CURIAM.**

Leo Simon appeals the economic and property distribution provisions of the decree dissolving his marriage to Deann Simon. Upon our de novo review, we affirm. Additionally, we order Leo to pay $5000 toward Deann's appellate attorney fees.

### I. Scope and Standards of Review.

We review dissolution of marriage cases de novo. Iowa R. App. P. 6.907; *In re Marriage of McDermott*, 827 N.W.2d 671, 679 (Iowa 2013). "Accordingly, we examine the entire record and adjudicate anew the issue of the property distribution." *McDermott*, 827 N.W.2d at 679. However, we do so with the realization that the district court possessed the advantage of listening to and observing firsthand the parties and witnesses. *Id.*; *In re Marriage of Zabecki*, 389 N.W.2d 396, 398 (Iowa 1986). Consequently, we credit the factual findings of the district court, especially as to the demeanor and believability of witnesses, but are not bound by them. Iowa R. App. P. 6.904(3)(g); *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007). Additionally, although our review is de novo, we afford the district court "considerable latitude" in fashioning its award and "will disturb the ruling only when there has been a failure to do equity." *In re Marriage of Schriner*, 695 N.W.2d 493, 496 (Iowa 2005).

### II. Background Facts and Proceedings.

On our de novo review, we find the relevant facts to be as follows. Leo and Deann Simon married in July 1980. Approximately a year before the parties married, Leo Simon purchased ninety-eight acres of land on contract for $136,920. He paid $16,000 down and made two payments before the marriage.

The remainder of the contract of nearly $100,000 was paid during the parties' marriage.

The ninety-eight acres of land included the parties' marital home ("home farm"). Deann began a milking operation after the parties married, and she ran dairy, hay, and corn on the home farm. Over time, the parties purchased other farm acreages, some situated near the home farm.

Leo and Deann have three children, all now over the age of eighteen. During the marriage, the children assisted in the running of the farm and dairy operations. One of the children still lives at home and continues to assist Deann in the operations, as well as raising her own livestock at the home farm. Another lives nearby on her own acreage, which is surrounded by land owned by the parties, and she helps Deann occasionally. Both children are close to Deann and, at best, have poor relationships with Leo.

In July 2011, Deann filed her petition for dissolution of the parties' marriage. Days before the January 2014 trial date, the parties entered into a written "stipulation of agreement" prepared by Deann's counsel. Leo was unrepresented, having had several attorneys withdraw from his representation during the pendency of the case, but he acknowledged and agreed he entered freely and voluntarily into the stipulation.

The stipulation provided that Deann would be awarded all of the parties' real estate and most of the farm equipment and machinery, and Leo would be awarded $1,570,845.98 "to offset the disparity in the division of the marital property between Deann and Leo," subject to certain terms not relevant here. Attached to the agreement was a list of machinery and equipment with valuations

for each item. Leo and Deann signed the agreement on January 24, 2014, and it was filed three days later on January 27, the date set for trial. However, Leo filed a notice on January 27 "revok[ing] his signature and consent" to the stipulation.

The parties then proceeded to trial, with Leo appearing pro se. Deann presented appraisals for each farm, along with a proposed property distribution, listing the parties' assets with proposed valuations, as well as their liabilities. Her proposal essentially mirrored the parties' prior stipulation. Leo did not provide an affidavit of financial status, nor were any exhibits entered into evidence on his behalf.

Both parties testified, as did two of their children. Deann and the children testified that Leo had a history of physically and verbally abusing Deann. The child who owned property surrounded by property owned by the parties testified Leo was not in her life at that time, and she had concerns that if Leo was awarded any of the property surrounding hers, they would not be able to get along. Deann and the children testified as to their commitment to continue the family farming operation.

Leo testified, and he agreed with most of the property valuations; however, he testified he believed the fair-market value of two of the five farms was higher than the amount found by Deann's appraiser. Leo offered no evidence to support his valuations beyond his own opinions. Leo proposed Deann receive the home farm and two other farm properties, but he requested he receive the remaining two farms. He testified he would not be running the farms, so there would be no need for him to be there, preventing any conflicts. Leo testified he suffered from mood swings and depression, and he admitted he had

given Deann a black eye many years ago during a period of stress. Leo requested he be given half of the real estate or, alternatively, the real estate be sold and the proceeds divided in half. He acknowledged selling the real estate would have tax consequences, but he essentially testified that he did not care "[i]f I can't have what I got coming."

In April 2014, the district court entered its judgment and decree dissolving the parties' marriage. Ultimately, the court awarded all of the marital real estate to Deann and ordered her to pay to Leo an equalization payment of $1,548,287. The court found the parties' children to be "extremely credible" and noted "[t]he physical and emotional abuse was obviously quite severe." As a result, the court concluded Leo could not "own any property jointly with Deann or any of the children" nor could he own "any property adjacent to any of Deann's property or the children's property." The court also ordered Leo to pay $10,000 of Deann's trial attorney fees, explaining:

> Deann has incurred substantial attorney fees of approximately $39,000. . . . The process took two-and-a-half years, and much of that delay was due to Leo. Deann's attorney prepared the Pretrial Stipulation form. Deann's attorney prepared very thorough exhibits. Deann obtained (and presumably paid for) appraisals on all five farms. Lastly, Deann incurred attorney fees for two days in trial, while Leo did not.

Leo subsequently filed an Iowa Rule of Civil Procedure 1.904(2) motion before the district court. However, a week later, he filed his notice of appeal of the decree. The district court entered an order thereafter finding it was without jurisdiction to consider Leo's posttrial motion because he had filed an appeal and the appellate courts now had jurisdiction of the matter.

Leo now appeals, asserting the district court's property distribution was inequitable. He contends the court should have awarded him half of the marital real estate or required it all be sold. Alternatively, he challenges the district court's equalization-payment calculation, asserting the court erred in several valuations. Leo also argues the court erred in ordering him to pay a portion of Deann's attorney fees. Both he and Deann request appellate attorney fees. We address their arguments in turn.

### III. Discussion.

"Iowa is an equitable distribution state." *McDermott*, 827 N.W.2d at 678. This essentially means our "courts divide the property of the parties at the time of divorce, except any property excluded from the divisible estate as separate property, in an equitable manner in light of the particular circumstances of the parties." *Schriner*, 695 N.W.2d at 496. However, "[a]n equitable distribution does not mean an equal division." *Id.* at 499. Rather, "[i]n the end, the award, one way or the other, is a product of both the items of property included in the divisible estate and all other relevant factors that impact the equitable distribution of that property." *Id.* Nevertheless, "[e]quality is . . . often most equitable; therefore, [the Iowa Supreme Court has] repeatedly insisted upon the equal or nearly equal division of marital assets." *McDermott*, 827 N.W.2d at 682. "To achieve an equitable division, we apply the factors contained in [Iowa Code] section 598.21(5) [(2013)], keeping in mind there are no hard and fast rules governing economic issues in dissolution actions." *Id.* Again, the district court is afforded wide latitude, and we will disturb the property distribution only when there has been a failure to do equity. *Schriner*, 695 N.W.2d at 496.

### A. *Real Estate Award.*

On appeal, Leo argues the court erred in awarding all of the marital real estate to Deann, asserting that he should have been given half of the real estate or that it all should have been sold and the proceeds divided between the parties. Upon our de novo review, we find the court's distribution is equitable.

First, Iowa Code section 598.21 "is written to define divisible property as 'all property' of the parties" and, but for exceptions not relevant here, "includes not only property acquired during the marriage by one or both of the parties, but property owned prior to the marriage by a party." *Id.* Specifically:

> Property brought into the marriage by a party is merely a factor to consider by the court, together with all other factors, in exercising its role as an architect of an equitable distribution of property at the end of the marriage. Iowa Code § 598.21(1)(b). More importantly, the statute makes no effort to include or exclude property from the divisible estate by such factors as the nature of the property of the parties, the method of acquisition, or the owner. "All property," except inherited or gifted property, is included, and the circumstances and underlying nature of the included property are generally considered as factors that impact the second task of determining an equitable division, along with all other relevant factors. *See id.* § 598.21(1)(a)-(m).

*Id.* Consequently, the court correctly identified Leo's premarital property in its determination of marital assets.

In dividing marital assets, our supreme court recently explained:

> An equalization payment is preferable when the court cannot divide an asset easily and there are not enough liquid assets in the marital estate to achieve an equitable distribution. The easiest way for a court to divide property is to order the parties to sell the land and split the proceeds. In that instance, each party is then responsible for any tax consequences arising from the sale. However, a forced sale is not a preferable method to divide marital assets, because such a sale tends to bring lower prices, and . . . a party usually wants to keep the property rather than sell it.

*McDermott*, 827 N.W.2d at 683.

There is also precedent acknowledging "the public policy in favor of preserving family farming operations," and a district court's decision to award a marital farm to the spouse who operated it with payments to the other spouse may be reasonable "without reaching *equality* so the farmer-spouse might retain ownership of the farm." *Id.* Thus, "when one of the parties expresses a strong interest in preserving the farm, the court should do everything possible to respect that desire." *Id.* Yet, "a party's interest in preserving the farm should not work to the detriment of the other spouse in determining an *equitable* settlement." *Id.*

Here, the evidence showed that Deann wished to continue farming the land as she had done for many years, and she had both the means to continue farming and to provide an equalization payment to Leo to compensate him for his share of the assets. She and her children also testified as to their intent to preserve the farmland so the children could continue the farming operation. Conversely, Leo testified that although he wanted half of the real estate, he did not plan to farm it himself nor cared if his children wanted to continue the farms because they no longer talked to him. He further testified he had a business going in another state and planned to relocate there, but he still wanted half of the real estate to be awarded to him, pointing out that he had purchased the home farm before the parties married. However, the bulk of the contract for purchasing the home farm was paid during the parties' marriage. Additionally, Leo admitted the parties would suffer tax consequences if the real estate was sold. Considering the relevant statutory factors, along with our state's public policy of continuing family farms when possible, we find, given Deann's and the

parties' children's intent to continue farming the land, as well as Deann's ability to compensate Leo monetarily for his equal share, the court's distribution of the real estate to Deann was equitable under the circumstances.

## B. Equalization Payment.

Leo next contends the court erred in calculating the amount of the equalization payment he was due in numerous respects, challenging, among other things, valuations found by the district court, as well as certain assets and liabilities. Deann argues Leo failed to preserve these issues for our review. We agree.

In his briefing, Leo asserts he preserved error by timely appealing from the district court's ruling. A timely notice of appeal "has nothing to do with error preservation." *State v. Lange*, 831 N.W.2d 844, 846-47 (Iowa Ct. App. 2013); *see also* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (Fall 2006) (footnote omitted) (explaining that "[a]s a general rule, the error preservation rules require a party to raise an issue in the trial court and obtain a ruling from the trial court"). Rather, to preserve error for appeal, issues must be both raised by a party and decided by the district court. *See In re Marriage of Gensley*, 777 N.W.2d 705, 718 (Iowa Ct. App. 2009) (citing *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002)). "Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in trial court." *State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999). If an issue is raised, and the district court fails to rule on it, the party advancing the issue must file a motion under Iowa Rule of Civil Procedure 1.904(2) to request a

ruling. *Id.* However, "the district court loses jurisdiction over the merits of the controversy and may not consider any posttrial motions filed after the notice of appeal." *IBP*, *Inc. v. Al-Gharib*, 604 N.W.2d 621, 628 (Iowa 2000).

Here, Leo did not present the issues he now raises on appeal concerning the district court's equalization-payment calculation at trial. The mere mention of an alleged fact during testimony is not sufficient to preserve error on the issue. *Mercer v. Pittway Corp.*, 616 N.W.2d 602, 625 (Iowa 2000). In any event, those issues he arguably raised at trial but were not expressly ruled upon by the district court, he failed to preserve for our review by way of a 1.904(2) motion because he filed his appeal immediately thereafter, removing the case from the district court's jurisdiction.

Pro se or not, parties to an appeal are expected to follow applicable rules. It has long been the rule that procedural rules apply equally to parties who are represented by counsel and to those who are not. *In re Estate of DeTar*, 572 N.W.2d 178, 180 (Iowa Ct. App. 1997) ("Substantial departures from appellate procedures cannot be permitted on the basis that a non-lawyer is handling [his or] her own appeal."). Pro se parties receive no preferential treatment. *Hays v. Hays*, 612 N.W.2d 817, 819 (Iowa Ct. App. 2000). "The law does not judge by two standards, one for lawyers and the other for lay persons. Rather, all are expected to act with equal competence. If lay persons choose to proceed pro se, they do so at their own risk." *Metro. Jacobson Dev. Venture v. Bd. of Review*, 476 N.W.2d 726, 729 (Iowa Ct. App. 1991). Although this may seem harsh to a pro se litigant, it is justified by the notion that appellate judges must not be cast in the role of advocates for a party who fails to comply with court rules and

inadequately presents an appeal. *See State v. Piper*, 663 N.W.2d 894, 913-14 (Iowa 2003). Because Leo did not preserve this issue for our review, we do not further address it.

### C.  Trial Attorney Fees.

Leo argues the district court erroneously awarded Deann trial attorney fees. An award of attorney fees is not a matter of right, but rather rests within the district court's discretion. *In re Marriage of Hocker*, 752 N.W.2d 447, 451 (Iowa Ct. App. 2008). We review the district court's award of attorney fees for abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). An award of attorney fees is based upon the respective abilities of the parties to pay the fees and whether the fees are fair and reasonable. *In re Marriage of Applegate*, 567 N.W.2d 671, 675 (Iowa Ct. App. 1997). Considering these factors, along with the district court's finding that Leo was primarily responsible for Deann incurring such significant attorney fees, we cannot say the district court abused its discretion in awarding $10,000 in trial attorney fees to Deann. We therefore affirm on this issue.

### D.  Appellate Attorney Fees.

Finally, both parties request an award of appellate attorney fees. Appellate attorney fees are not a matter of right. *Sullins*, 715 N.W.2d at 255. We consider the parties' needs, ability to pay, and the relative merits of the appeal. *Id.* Applying these factors to the circumstances in this case, we deny Leo's request and determine he should pay $5000 toward Deann's appellate attorney fees.

***IV. Conclusion.***

In considering the property division as a whole, we find it was equitable. We therefore affirm the district court's dissolution decree, and we order Leo to pay $5000 toward Deann's appellate attorney fees. Costs on appeal are assessed to Leo.

**AFFIRMED.**