## IN THE COURT OF APPEALS OF IOWA

No. 20-0935
Filed November 4, 2020

**IN THE INTEREST OF D.L., E.L., and J.L.,**
**Minor Children,**

**J.L., Father,**
        Appellant.
_____


        Appeal from the Iowa District Court for Poweshiek County, Rose Anne Mefford, District Associate Judge.


        A father appeals the termination of his parental rights to his children. **AFFIRMED.**


        Colin McCormack of Van Cleaf & McCormack Law, Des Moines, for appellant father.

        Thomas J. Miller, Attorney General, and Charles K. Phillips, Assistant Attorney General, for appellee State.

        Patrick J. Mahaffey of Mahaffey Law Office, Montezuma, attorney and guardian ad litem for minor children.


        Considered by Bower, C.J., Schumacher, J., and Mahan, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**MAHAN, Senior Judge.**

A father appeals the termination of his parental rights to his children,[1] born in 2014, 2016, and 2017.[2] He contends the State failed to prove the grounds for termination cited by the juvenile court and the court erred in denying his motion to reconsider. We affirm.

## I.    *Background Facts and Proceedings*

This family came to the attention of the department of human services in August 2018, when the equivalent of the department of human services in Texas contacted law enforcement in Iowa to request a welfare check on the children.[3] The family resided in Texas but had been staying at a motel in Grinnell since June due to the father's employment in Iowa. Law enforcement found the children alone in a motel room, and the Texas department initiated a child-abuse assessment.

The next day, an Iowa caseworker attempted to make contact with the family. The mother refused to answer the door and did so only after law enforcement was summoned. The motel room was in "complete squalor," with feces on the floor and mattresses, and rotted food, medications, and a lit candle within the reach of the children. It was 2:30 p.m., and the children were "wearing no clothing except diapers," "hadn't eaten that day," had "severe head lice

---

[1] The father is not the biological father of D.L., but his parental rights of D.L. as the child's purported legal father were terminated.

[2] The parental rights of children's mother were also terminated, but she did not appeal.

[3] The family was actively involved with the department in Texas. The father expressed there had been "at least two service cases in the state of Texas that he and [the mother] were involved with."

infestations," and required antibiotics to treat various illnesses.[4] J.L. had "severe bruising and scratch marks" caused by being hit by a belt as discipline, and knots had to be cut out of her tangled hair. The parents were each convicted of three counts of child endangerment, and a founded child-abuse report was issued following the incident.

The children were removed from the parents' care and adjudicated in need of assistance.[5] The children have remained in foster care since their removal in August 2018. The parents began participating in rehabilitative services and moved into an apartment. In September, the mother was observed leaving the apartment with a young child, who was determined to be the mother's child, O.S.[6] The mother reported O.S. resided in Indiana, but O.S. informed the department she had been living with her "fake mom" in Texas. The department learned the parents had "kept [O.S.] concealed with them for approximately six weeks" before the department discovered the child in their care. O.S. was adjudicated in a separate case, removed from the parents' care, and placed in foster care.[7]

---

[4] Upon medical examination in the emergency room, D.L. was diagnosed with an ear infection and E.L. and J.L. had bacterial infections on their skin.

[5] The initial adjudicatory order was filed in September 2018. That adjudication and subsequent dispositional order were reversed and remanded by this court in *In re D.L.*, No. 18-2014, 2019 WL 719187, at *2–4 (Iowa Ct. App. Feb. 20, 2019) (upholding the court's emergency temporary removal order but remanding for a determination of whether Texas had declined jurisdiction and whether Iowa had become the children's home state). Upon determining Iowa had subject matter jurisdiction, the juvenile court thereafter entered an order in May 2019 adjudicating the children in need of assistance.

[6] O.S. is not the father's child.

[7] The parental rights of O.S. were also terminated, but that order is not at issue in this appeal.

In November, the mother gave birth to the parents' child, M.L., who was born several weeks premature. M.L. remained hospitalized until December 30, when he was released to the parents' care. The parents failed to inform the department of the child's discharge from the hospital, contrary to the department's instructions. The next day, the father called 911 to report the child was not breathing. Meanwhile, the mother cut her arms from the wrist to the elbow because she "thought [M.L.] was dead." M.L. was taken to the emergency room and then to Blank Children's Hospital, where he was taken off life support several days later. It was determined the child's death was caused by accidental suffocation. The mother was involuntarily commited for inpatient psychiatric treatment following the incident.

In May 2019, the mother moved to Texas, stating she could not "be there" for the children due to her "own issues." The mother has had no contact with the children since that time.

Meanwhile, the father was attending parenting classes, but, according to the service provider, he was "not able to do the things he's learned." The father made two trips to Texas after the mother moved there—in June and July. He stated the visits were to see his older child. During one of those trips, the father was detained in Oklahoma on outstanding warrants. Due to concerns about the father's "misrepresentations" to the department, his visits with the children returned to fully supervised.

A dispositional order entered in July 2019 found the children could not be returned home

due to the mother's severe mental health issues and need for ongoing treatment; the father's failure to protect the children; the death of a sibling, [M.L.], who was returned to the parents' care in December; the parents' convictions of child endangerment wherein these children were the victims; Mother's evasiveness and history of non-cooperation and deception; the parents' lack of supervision of the children; and the parents' inability to supervise/care for the children at this time.

The State filed a petition for termination of parental rights in September 2019. That month, the father was arrested for speeding and also charged with operating while intoxicated. A drug test submitted by the father in October was "dilute[d]," but a subsequent test came back negative. Caseworkers noted the father's "contributions to child raising had been minimal" prior to the mother's departure to Texas, and his "parenting skills need vast improvement before he will be able to adequately care for the children on his own."

The termination hearing took place in November 2019. The department caseworker, guardian ad litem, and court-appointed special advocate recommended termination of the father's parental rights. The record before the juvenile court indicated the children had been removed from the father's care since August 2018, and the father's visitation with the children had been fully supervised since that time, with the exception of a short period of semi-supervised visitation during July through September 2019. The department caseworker testified, "[O]n the surface, [the father] has done more as part of the case plan [than the mother], but . . . underlying, I don't believe that he's really even cut the surface of what he needs to do for parenting." The caseworker expressed concerns about the father's "honesty," "decision-making," and "protective capabilities," and opined the children

could not safely be returned to the father's care at the present time. The guardian ad litem echoed this sentiment.

In June 2020, the court entered its order terminating the father's parental rights pursuant to Iowa Code section 232.116(1)(f) (2019) (concerning J.L.), (h) (concerning D.L. and E.L.), and (d) and (i) (concerning all children). The father appeals.

## II. *Standard of Review*

Appellate review of termination-of-parental-rights proceedings is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III. *Motion to Reconsider*

The father contends the court "erred in issuing a ruling on termination of parental rights seven months following hearing without seeking any update of the circumstances of the father or the minor children and refusing to consider such an update when it was offered by way of a motion to reconsider." Following the termination order, the father filed a notice of appeal and a motion to reconsider pursuant to Iowa Rule of Civil Procedure 1.904(2). The father's motion alleged his "abilities in parenting [had] significantly progressed" in the seven months since the termination hearing, as "outlined in an affidavit of the father alongside certain attached documents." An affidavit of the father was the only attachment to the motion; it described his parenting skills, visits with the children, and lack of contact

with the mother. The district court denied the motion, finding the father "has appealed the ruling."

The father likens this situation to that presented in *In re L.T.*, in which the supreme court found the juvenile court abused its discretion by refusing to reopen the record when approximately twenty months passed between the termination hearing and the termination order and "the mother's situation may well have materially changed." 924 N.W.2d at 525–26. Notably, in *L.T.*, the mother sought to reopen the record before a final order was entered. 924 N.W.2d at 527.

We disagree with the father's comparison, particularly considering the procedural posture of this case. *Cf. In re A.H.*, No. 19-2024, 2020 WL 10498846, at *2 (Iowa Ct. App. Mar. 4, 2020) (distinguishing *L.T.* and affirming the juvenile court's denial of the father's motion to reopen the record where "there was not a lengthy delay between the termination hearing and the filing of the termination order," "the information that he wanted to present by reopening the record was within the contemplation of the court from the evidence presented at the hearing," and the father "*waited until after the court entered the termination order before requesting to reopen the record*" (emphasis added)). Here, the father's motion to reconsider was filed both after the juvenile court entered the termination order *and* after the father filed his notice of appeal. "A moving party is deemed to have waived and abandoned a posttrial motion when that party files a notice of appeal." *Freer v. DAC, Inc.*, 929 N.W.2d 685, 687–88 (Iowa 2019) ("The general rule that the district court loses jurisdiction when an appeal is perfected has application when the appeal is taken before the filing of posttrial motions."); *IBP, Inc. v. Al-Gharib*, 604 N.W.2d 621, 628 (Iowa 2000) ("Once an appeal is perfected, the

appellate court has jurisdiction. At the same time, the district court loses jurisdiction over the merits of the controversy and may not consider any posttrial motions filed after the notice of appeal." (citations omitted)). Accordingly, the father's notice of appeal waived his motion and divested the district court of jurisdiction. *See Freer*, 929 N.W.2d at 688; *IBP, Inc.*, 604 N.W.2d at 628.

## IV.     *Grounds for Termination*

The father challenges the sufficiency of the evidence supporting the grounds for termination cited by the juvenile court. We may affirm if we find clear and convincing evidence to support any of the statutory provisions. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We will focus on Iowa Code section 232.116(1)(f) and (h), which require proof of several elements conceded by the father and proof the children could not be returned to his custody. The father contends the evidence did not establish the children could not be returned to his care at the present time.

At the termination hearing, the father testified he was living in a three-bedroom duplex that was suitable for the children, he was able to alter his work schedule, and he was trying to find daycare for the children. He stated he had "no relationship" with the mother, he had not had contact with her since "[t]he day that she left" for Texas, and he did not intend to resume a relationship with her. The father stated he planned to return to Texas with the children if the juvenile case was closed and after his criminal matters in Iowa were resolved.

The father acknowledged the family's history of involvement with the department in Texas but shifted the blame to the mother for being "overwhelmed with the kids." He admitted he "could have" done more to ensure the children's

safety and well-being prior to their removal in Iowa and stated he "relied too much on their mother." Yet the father acknowledged the longest period of time he had cared for the children was "two weeks when [he] and [the mother] had broken up."

The department caseworker testified that when the children were discovered in Iowa (during which time there was an open child-services case from Texas), "[t]heir needs were not being met at all," including "supervision," "[f]ood and nutrition," "physical care," and "medical needs." After the children's removal, new concerns arose regarding the parents' concealment of O.S. in their home and their failure to notify the department when M.L. was released from the hospital into their care. The record shows a pattern of "abuse," "neglect," and failure to disclose information. Indeed, the caseworker noted there were "a lot of concerns with interactions with the State of Texas" and opined the father was "not honest about things until we find them out after the fact."

The guardian ad litem opined he had "concerns and reservations about [the father's] lack of awareness of his responsibility as to where the children are currently at at this point, and that lack of awareness creates safety concerns now and moving forward." The juvenile court found:

> The child[ren] cannot safely be returned to the father. . . . Father made some limited progress, but after advancing to semi-supervised visits, his behaviors resulted in visits returning to fully supervised in just a few short weeks. . . . [The] mother may have absented herself for more than a year, but [the father's] demonstrated defense of mother's actions and acquiescence to mother's substandard parenting and supervision of the children place them at the same risk.

We concur in the court's finding that the children could not be returned to the father's custody at the time of the termination hearing. Iowa Code section 232.116(1)(f) and (h) were satisfied.

Termination also must serve the children's best interests. *See* Iowa Code § 232.116(2). For the reasons set forth above, we conclude termination is in the children's best interests, and no permissive statutory exception should be applied to preclude termination. *See id.* § 232.116(3). We affirm the decision of the juvenile court to terminate the father's parental rights.

**AFFIRMED.**